**Raymond STEWART, Appellant (Defendant below),**

**v.**

**STATE of Indiana, Appellee (Plaintiff below).**

**No. 983S337.**

Supreme Court of Indiana.

March 6, 1985.

Kenneth T. Roberts, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Jay Rodia, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, Raymond Stewart, was convicted by a jury of robbery, a Class A felony, Ind.Code § 35–42–5–1 (Burns 1984 Supp.), confinement, a Class B felony, Ind. Code § 35–42–3–3 (Burns 1984 Supp.), and attempted murder, a Class A felony, Ind. Code §§ 35–42–1–1 and 35–41–5–1 (Burns 1979 Repl.), and was sentenced to three consecutive terms of imprisonment of fifty, twenty, and fifty years. He raises the following issues in this direct appeal:

1. Whether the evidence was sufficient to sustain his convictions;

2. Whether the trial court erred in denying the defendant's motion to suppress the victim's identification on the basis that the pretrial identification procedure was unduly suggestive; and

3. Whether the prosecutor engaged in misconduct and thereby denied the defendant a fair trial.

I.

The defendant claims the evidence is not sufficient to sustain his convictions for robbery, attempted murder, and confinement. We will neither reweigh the evidence nor judge the credibility of witnesses. *Oatts v. State*, (1982) Ind., 437 N.E.2d 463. We will look only to that evidence most favorable to the state together with reasonable inferences to be drawn therefrom. If, from that viewpoint, there is substantial evidence to support the conclusion that the defendant is guilty beyond a reasonable doubt, the verdict will not be disturbed.

A brief summary of the facts from the record most favorable to the state shows that the victim, a truck driver for a vending machine supply company, was driving his route when he was stopped by the defendant. After threatening the victim with his gun and taking his money, the defendant entered the truck and pointed a gun in the victim's eye. He then ordered the victim to show him the items carried in the back of the truck. The victim removed money boxes from the truck and set them on the ground for the defendant. The defendant struck the victim twice on the head with the gun. The victim attempted to flee from the defendant but was shot twice in the back. The defendant forced the victim to sit on a curb, shot him in the arm, and took his jacket. Next, he dragged the victim down an alley, pushed him into a crawl space, and ordered him to stay there if he wanted to live. The defendant left and the victim crawled in the street and was spotted by a policeman.

Robbery is the knowing and intentional taking of property from another by using or threatening force or by putting that person in fear. Ind.Code § 35–42–5–1

(Burns 1984 Supp.). The evidence clearly supports the robbery conviction.

■ The evidence that the defendant shot the victim twice in the back supports his conviction for attempted murder. Ind. Code §§ 35–42–1–1 and 35–41–5–1 (Burns 1984 Supp.); *Williams v. State*, (1979) 271 Ind. 656, 395 N.E.2d 239. And, the evidence that the defendant shot the victim as he attempted escape, dragged him down the alley, and forced him to remain in the crawl space just as clearly supports the confinement conviction. Ind.Code § 35–42–3–3 (Burns 1984 Supp.). We find no error here.

## II.

While the victim was hospitalized, a detective showed him a photographic array of six photographs, one of which was of the defendant. However, at that time the victim was too heavily sedated to study the array. Later during the hospital stay, the victim was shown another array which included a four-year old photograph of the defendant. The victim was unable to make an identification. Finally, after the victim was home, he was shown a third array which was comprised of five new photographs and a current photograph of the defendant. The victim chose the defendant's photograph and identified it as depicting the man who robbed and shot him.

The defendant claims that the pretrial identification procedure was so suggestive that the testimony of it and of the in-court identification should have been excluded. We disagree.

■ First, we do not believe that the arrays shown were so suggestive of the defendant's picture to give rise to a substantial likelihood of misidentification. *See Simmons v. United States*, (1968) 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247; *see also Head v. State*, (1982) Ind., 443 N.E.2d 44. The photographic arrays shown to the victim were composed of six black males reasonably close in age and size. We disagree with the defendant's assertion that his photograph "obviously stuck out as being different from the others."

■ The defendant points to the fact that the two arrays considered by the victim each had only one picture in common— that of the defendant. While we could not say that in another case the repetitive display of one individual's visage would not constitute undue suggestiveness, we believe differently about the circumstances of this case. The victim viewed only two arrays. The first array contained a photograph of the defendant which was four years old. The second array, from which the defendant's photograph was chosen was quite dissimilar from the first (the defendant having gained eighty pounds), and had been taken just two weeks after the crime. As stated, in neither case did the defendant's photograph stand out from the others.

■ Second, regardless of any possible suggestiveness in the pretrial lineup, the in-court identification was based on observations by the victim independent of the pretrial procedure. *See Harding v. State*, (1984) Ind., 457 N.E.2d 1098. The victim testified that he observed the defendant at close range under street lights for approximately twenty minutes. *See Harris v. State*, (1980) 273 Ind. 60, 403 N.E.2d 327. The trial court did not err.

## III.

■ The defendant's final argument is that he was denied a fair trial by the prosecutor's alleged misconduct. We will first determine if misconduct in fact occurred. *Maldonado v. State*, (1976) 265 Ind. 492, 355 N.E.2d 843. Then, we will consider whether the defendant was thereby placed in grave peril. *Id.* 355 N.E.2d at 848. That determination depends on the probable persuasive effect of the misconduct on the jury's decision. *Id.*

■ The defendant cites to several snide remarks by the prosecutor which obliquely referred negatively to defense counsel's ability and preparedness. For example, the prosecutor stated as defense counsel was

handling exhibits, "The jury can't tell what he's doing up there. He could be playing card tricks for all they know." The prosecutor also said regarding some exhibits, "[Counsel] just didn't bother to look for them until today." The prosecutor's conduct does violate traditional standards in general, and, specifically, the Disciplinary Rules of the Code of Professional Responsibility which demand fairness and courtesy to opposing counsel. However, in light of their relative innocuousness, their infrequency, and the fact that a generally competent defense was presented, we believe the probable persuasive effect of the prosecutor's conduct on the jury's decision was negligible.

### IV.

The defendant's other allegation of misconduct is that the prosecutor improperly asked a witness about the defendant's "sixteen other victims." We do not believe this reference to criminal activity was improper as it was made in rebuttal after the defendant had put his character in issue. Furthermore, the defendant had previously introduced his "rap sheet" which had informed the jury of his numerous arrests. Thus, even assuming the reference constituted misconduct, its effect on the jury could not have been great enough to deny the defendant a fair trial.

For all the foregoing reasons there was no trial court error and the decision of the trial court should be affirmed.

Judgment affirmed.

GIVAN, C.J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.