Raymond STEWART, Petitioner–Appellant,

v.

Jack R. DUCKWORTH, Respondent–Appellee.

No. 93–3727.

United States Court of Appeals, Seventh Circuit.

Argued May 15, 1996.

Decided Aug. 2, 1996.

Thomas Dale Bunton (argued), Baker & Daniels, Indianapolis, IN, for Petitioner–Appellant.

Thomas D. Quigley, Robert L. Collins (argued), Office of the Atty. Gen., Indianapolis, IN, for Respondent–Appellee.

Before CUDAHY, COFFEY and FLAUM, Circuit Judges.

CUDAHY, Circuit Judge.

In 1983 Raymond Stewart was convicted by an Indiana jury of attempted murder, robbery and confinement. The convictions arose out of the robbery and shooting of the driver of a vending machine supply truck on November 20, 1981. Two important issues in the case were the accuracy of the victim's identification of Stewart as the perpetrator of the crimes and the question whether the shooting was intended to be fatal, a required element of attempted murder in Indiana. On direct appeal, the Indiana Supreme Court considered and rejected claims that the pretrial identification procedures were unconstitutionally suggestive, that the evidence was insufficient to support the verdict and that prosecutorial misconduct had denied Stewart a fair trial. *Stewart v. State*, 474 N.E.2d 1010 (Ind.1985). Following state postconviction proceedings, the Indiana Appellate Court rejected claims of ineffective assistance of trial and appellate counsel, denial of the right to a jury trial due to an erroneous attempted murder instruction and fundamental error in the imposition of an enhanced sentence. *Stewart v. State*, 567 N.E.2d 171 (Ind.App. 3 Dist.1991).

Stewart then filed a pro se petition for writ of habeas corpus, in which he raised all the above grounds for relief. The district court denied the petition. On appeal, Stewart's counsel focuses on the identification and jury instruction issues. In a pro se brief Stewart also contests the district court's rulings on the other grounds. We affirm the district court's decision.[1]

I. Background

The events underlying this case occurred on November 20, 1981. A vending machine service truck was stopped along its route by an armed assailant. The robbery and assault occurred a few blocks from Stewart's home. The assailant pointed a gun in the truck driver's eye and demanded that the driver open the back of the truck. After the driver, William Crow, opened the truck and removed the vending machine money boxes, the assailant struck him twice on the head with the gun. Crow attempted to flee and was shot twice in the back. The assailant then forced Crow to sit on the curb and shot him in the arm. Next, he dragged Crow into an alley, pushed him into a stairwell and ordered him to stay there if he wanted to live. After the assailant left, Crow eventually crawled into the street and was rescued by a police officer.

Immediately following the attack, Crow described the assailant as a black male, weighing about 150 pounds, standing about 6 feet 1 inches and wearing a dark hat with a bill. R. at 184–85. Crow suffered multiple injuries as a result of the shootings and was hospitalized for two periods of nine or ten days.

Crow later identified Stewart as his assailant. While Crow was hospitalized, he was twice shown the same array of six photos by police officer Combs. The array included a photo of Stewart which was taken in 1977. Notations on the back of the photo indicate that Stewart weighed 230 pounds and was 6 feet 1 inches tall. Crow was unable to make any identification after studying this first group of photos. After Crow was released from the hospital, he was shown a different array of six photographs. This array included a very recent picture of Stewart. The inscription on the back of that photo indicated that Stewart weighed 150 pounds and was 6 feet 3 inches tall. After studying the second group of photos for five or ten minutes, Crow identified Stewart as the perpetrator of the attack on him.

---

1. Congress recently amended the statute governing the granting of petitions for writ of habeas corpus. Anti–Terrorism and Effective Death Penalty Act, P.L. 104–132, 110 Stat. 1214, enacted April 24, 1996. The new act makes substantive and procedural changes which could, in principle, affect our review of this case. This court has yet to determine whether and to what extent the new act applies to cases which were pending on appeal at the time of its enactment. Decision is pending in *Lindh v. Murphy*, No. 95–3608, in which argument was heard before the *en banc* court on June 17, 1996, regarding the retroactivity of the new act. Because Stewart's petition fails under any plausible interpretation of the new Act, as well as under prior law, we need not determine whether the new Act applies to this appeal.

Stewart was arrested at his mother's home, where he resided. A search of the house turned up a dark, billed hat with a Harley Davidson emblem on the front and the set of keys which Crow had used to open the back of the truck on the night of the attack.

Stewart's mother testified at trial that he had been home with her during the entire night on which the attack occurred. She testified that Stewart had a serious stomach illness and that she knew he was at home throughout the night because she heard him making frequent trips to the bathroom, which was located across the hall from her room. Officer Combs, on the other hand, testified that Stewart had told him that he had been at a gambling house at the time of the incident. Stewart himself testified that he was at home with his mother when the robbery occurred and that his remark to Officer Combs about the gambling house was in reference to a different date.

## II. Pretrial Identification

Stewart argues that Crow's identification of him from the third photo showing was tainted by the fact that Crow had, by that time, seen his face twice before in the previous photo showings. Further, Stewart argues, his face was the only one common to all three arrays. For this reason, Stewart argues that the pretrial identification was unduly suggestive and that Crow's in-court identification of him as the assailant was tainted by the improper pretrial identification.

 The constitutionality of a challenged pretrial identification procedure is analyzed in two steps. First, the court must determine whether the procedure was "unnecessarily suggestive." Even if the procedure was "unnecessarily suggestive," the

identification may still be admissible if "under the totality of the circumstances the identification was reliable even though the confrontation procedure was suggestive." *Neil v. Biggers,* 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972). In analyzing the totality of the circumstances, courts consider "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Id.*

 The district court decided that it need not reach the second step of analysis in this case because the photo identification procedure was not unduly suggestive. We agree. As the district court noted, the state court found that Stewart's face did not stand out among the photos selected for either of the arrays. Our independent review of the photos supports this finding. Second, the district court noted that in some circumstances the fact that a defendant's photo is the only one which occurs in several photo arrays shown to the same witness *could* be unduly suggestive. Here, however, the district court identified several reasons that the photo viewings were not unduly suggestive. The court reiterated that Stewart's photo did not stand out in the arrays, and further noted that a period of eleven days had expired between viewings of the two arrays. Most importantly, the district court noted that Stewart's photograph in the first group looks very different from his photograph in the second. Our review of the photos confirms this critical factor. In the second photo, taken shortly after the crime, Stewart appears thin and has a long, bushy hairstyle. In the first photo, taken in 1977, Stewart may appear heavier and has very short hair.[2]

---

2. Stewart, on appeal, makes much of the fact that "the information on the backs of these pictures is unreliable" because one picture listed his height as 6 feet 3 inches and the other as 6 feet 1 inches and because "a visual review of the photographs reveals that Stewart did not lose eighty pounds during this period." Stewart Br. at 23. We first note that the information on the backs of the photos is irrelevant to the analysis of suggestiveness, since it is the difference in the *ap-*

*pearance of the photos* upon which we and the district court rely. Second, while we have no suggestion as to the origin of the discrepancy in height between the two photos, we cannot agree with Stewart's contention that visual review of the photographs reveals that Stewart did not lose eighty pounds between 1977 and 1981. Stewart looks as though he may well have been heavier in the first photo than in the second. There is no information in the record, other than the

Finally, we add to the district court's analysis the observation that, though Crow was shown the 1977 photo on two occasions, it was only when he viewed the 1981 photo, taken very soon after the crime, that he was able to identify Stewart. It thus seems likely that Crow was unable to identify Stewart from the earlier photo because his appearance was substantially different in 1977. It would be a different matter had Crow been shown the recent photos twice before making an identification. Because we agree with the district court that the identification procedure was not unduly suggestive, we need not consider whether the totality of the circumstances would have validated the identification in any event. Nor need we consider the effect of the in-court identification on the analysis.

## III. Attempted Murder Instruction

■ Stewart also argues that the attempted murder instruction given to the jury misstated the specific intent element of the crime, depriving him of his right to a jury determination of guilt as to every element of the crime. Conviction of the crime of attempted murder requires proof of a specific intent to kill the victim. Indiana law includes a "strict rule that attempted murder instructions must include the required mens rea of specific intent." *Beasley v. State,* 643 N.E.2d 346, 348 (Ind.1994). As a matter of federal constitutional law (which, of course, governs this habeas corpus review), the jury instructions must protect the defendant's "right to have a jury determine, beyond a reasonable doubt, his guilt of every element of the crime with which he is charged." *United States v. Gaudin,* —— U.S. ——, ——, 115 S.Ct. 2310, 2320, 132 L.Ed.2d 444 (1995). A court may not direct a verdict with respect to any element of a crime, no matter how overwhelming the evidence. However, the mere fact that a jury instruction is in error does not dictate reversal of the conviction. An erroneous jury instruction may, in

some circumstances, constitute harmless error. The Supreme Court explained that "[t]he inquiry ... is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error." *Sullivan v. Louisiana,* 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993).

■ With all of this in mind, we consider the attempted murder instruction given in this case. The instruction read, in relevant part:

To convict the defendant the State must have proved each of the following elements: The defendant

1. did knowingly

2. engage in conduct to wit: attempt to commit the crime of Murder by attempting to kill

3. another human being

4. that the conduct was a substantial step toward the commission of the crime of murder.

If the State failed to prove each of the following elements beyond a reasonable doubt, you should find the defendant not guilty.

If the State did prove each of these elements beyond a reasonable doubt, you should find the defendant guilty of the crime of attempt Murder, a Class A felony.

R. at 108. Stewart argues that, by using the phrase "did knowingly," the instruction allowed the jury to convict Stewart without finding beyond a reasonable doubt that he had the specific intent to kill Crow.

On the facts of this case, one can certainly understand Stewart's focus on the issue of specific intent. After all, while Stewart did seriously and brutally injure Crow, he did not finish him off, though he could easily have done so. In fact, he abandoned Crow with the specific admonishment that he stay

notes on the backs of the photos, to indicate whether Stewart in fact lost a substantial amount of weight between 1977 and 1981. However, we note that between those years Stewart contracted a serious stomach illness, which required continual treatment and occa-

sional hospitalization. It would not, in fact, be particularly surprising had Stewart lost eighty pounds in the interim due to his illness. In any event, the crucial point is that the information on the backs of the photographs has no bearing on the constitutional analysis.

put if he wanted to live. Thus it might have been *possible* for a jury to conclude that Stewart did not intend to kill his victim. The jury, however, did not come to that conclusion and one can hardly be surprised at this result, given that Stewart shot Crow twice in the back as he attempted to flee.

Whatever led the jury to its decision, the attempted murder instruction did not *mislead* the jury regarding the requirement of specific intent. While the instruction uses the word "knowingly" in one of the elements, it clearly states that the defendant must found to have "attempt[ed] to commit the crime of Murder by attempting to kill." The jury was instructed that *each* of the listed elements must be found beyond a reasonable doubt. It is simply a logical impossibility to find that Stewart "attempt[ed] to commit the crime of Murder by attempting to kill" Crow without also finding that Stewart intended to kill Crow.

Since the instruction did not violate Stewart's federal constitutional rights, we need not delve into the question, discussed at length by the parties and the district court, whether the Indiana procedural default rules for jury instructions constitute an adequate state grounds for rejecting this argument. Whether or not the issue was procedurally defaulted, Stewart cannot prevail since there was no constitutional violation.

## IV. Other Issues

### A. Prosecutorial Misconduct

Stewart cites several examples of inappropriate comments made by the prosecutor during the trial. He argues that these comments amounted to prosecutorial misconduct during the trial and deprived him of his due process right to a fair trial. The Indiana Supreme Court agreed that the prosecutor's behavior was objectionable. Indeed, the Indiana Supreme Court stated that "[t]he prosecutor's conduct does violate traditional standards in general, and, specifically, the Disciplinary Rules of the Code of Professional Responsibility which demand fairness and courtesy to opposing counsel." *Stewart v. State,* 474 N.E.2d at 1013. However, that court found—and the district court agreed—that the improper conduct of the prosecutor did not prejudice Stewart.

In reviewing an allegation of prosecutorial misconduct we ask whether the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986). In so doing we consider "the weight of the evidence against the defendant." *Shepard v. Lane,* 818 F.2d 615, 621 (7th Cir.1987), *cert. denied,* 484 U.S. 929, 108 S.Ct. 296, 98 L.Ed.2d 256 (1987). In this case, while our review of the transcript does suggest that the prosecutor invested the trial with unnecessary rancor by his comments aimed at Stewart's counsel, we agree with the district court that the infrequency of the comments and their general irrelevance to the matters at issue in the trial, coupled with the weight of the evidence against Stewart assures that the prosecutor's misconduct did not affect the fairness of the trial.

One comment which was not directed at Stewart's counsel but at Stewart himself, deserves separate discussion. In one of his questions to a witness, the prosecutor implied that there were sixteen previous victims of crimes perpetrated by Stewart. R. at 411. In fact, Stewart had sixteen *arrests* on his rap sheet, but most of the charges relating to these arrests were dismissed. R. at 342. Indeed, Stewart had only four prior convictions, all of which resulted only in minor fines and were, in all likelihood, victimless.[3] The prosecutor's question was thus inaccurate and highly prejudicial. However, Stewart's attorney objected to the inaccurate premise of the question and the objection was sustained. The objection was rather poorly worded, since Stewart's counsel stated only that there were "not nearly that many convictions." R. at 411–12. But, since Stewart's rap sheet had been introduced into evidence, the jury was free to consult the rap sheet

---

3. Stewart's prior convictions, as listed on his rap sheet, consisted of a 1973 conviction for "VAGH," resulting in a $4 fine plus court costs, a 1975 conviction for "V.T." resulting in a $4 fine plus court costs and two 1977 convictions for "drunk" resulting in $7 fines plus costs.

during its deliberations to clear up any confusion caused by the improper question.

Thus, we believe that the district and state courts properly concluded that, while the prosecutor's conduct was objectionable in some respects, the misconduct did not affect the fairness of the trial.

### B. Sufficiency of the Evidence

Stewart also attacks the sufficiency of the evidence underlying the jury's verdict. Here, Stewart merely reiterates his complaints about the process by which he was identified by the victim and disputes the jury's evaluation of his alibi evidence. We have already determined that the identification procedure was not unconstitutionally suggestive. Given that the jury was free to make its own credibility judgments regarding the alibi witnesses, the evidence was manifestly sufficient to support the conviction.

### C. Ineffectiveness of Counsel

Stewart argues that both his trial and appellate counsel rendered ineffective assistance. The district court followed the Indiana Appellate Court in finding that Stewart had procedurally defaulted the issue of trial counsel effectiveness by failing to raise it on direct appeal. Stewart counters by arguing that the ineffectiveness of his appellate counsel constituted cause for his procedural default. Because Stewart cannot pass the *Strickland* test for ineffective assistance of either trial or appellate counsel since he is unable to show that he was prejudiced by his attorneys' errors, we need not decide the procedural default question.[4] *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Stewart alleges a litany of errors on the part of trial counsel: failing to complain of a typographical error in the date of the offense in the State's Answer to Notice of Alibi; waiving of a motion to suppress the identification testimony; failing to object to the prosecutor's reference to Stewart as the perpetrator prior to the identification testimony; attempting to introduce evidence without laying a proper foundation; neglecting to examine evidence available through discovery prior to trial; failing to object to hearsay testimony; introducing Stewart's rap sheet into evidence; eliciting damaging testimony from defense witnesses as a result of failure to interview the witnesses; failing to object to the attempted murder jury instruction; and filing a boilerplate "Belated Motion to Correct Errors" which neglected to raise any sentencing issues.

After reviewing the trial transcript, we agree with the district court that, given the weight of the evidence against Stewart in this case, "[d]espite his attorney's less-than-stellar performance," Dist. Ct. Op. at A–13, Stewart was not prejudiced by his trial counsel's errors.

 Of the errors mentioned, the most egregious was his trial counsel's failure to complain that the trial court imposed an enhanced sentence without abiding by the procedural prerequisites required by state law. At sentencing, the trial court failed to comply with Indiana's requirement that a finding of aggravating circumstances be supported by a discussion of the factual bases for the finding. *Beasley v. State,* 445 N.E.2d 1372, 1375 (Ind.1983). The district court correctly points out that this state law issue is not a proper ground for federal habeas relief. However, failure to raise a patently meritorious state law issue can, of itself, constitute ineffective assistance of counsel, so we must consider whether counsel's failure to complain of this error resulted in any prejudice to Stewart. *Steward v. Gilmore,* 80 F.3d 1205, 1213 (7th Cir.1996). Given the facts of this case, it is clear that, if pressed, the trial court could easily have articulated reasons for the finding of aggravating circumstances. Thus, Stewart was not prejudiced by his attorney's failure to raise the matter.

Regarding his appellate counsel, Stewart complains that counsel failed to raise on ap-

---

4. Because Stewart suffered no prejudice (and thus there was no Sixth Amendment violation) due to any errors which may have been made by trial or appellate counsel, we need not determine whether to apply here the provisions of the new Anti–Terrorism and Effective Death Penalty Act regarding exhaustion of state remedies or prior law governing procedural default.

peal the attempted murder instruction, the sentencing errors and the ineffectiveness of trial counsel. As is clear from our discussion so far, none of these omissions resulted in prejudice to Stewart. Thus, whether or not the performance of Stewart's trial or appellate counsel was less than minimally competent (and we recognize that his trial counsel appears to have made numerous mistakes), Stewart has not met the *Strickland* requirement that he demonstrate prejudice as a result.

## V. Conclusion

Having failed to uncover any constitutional deficiencies underlying Stewart's incarceration, we affirm the district court's denial of his Petition for Writ of Habeas Corpus.

AFFIRMED.