Randolph McGOWAN, Petitioner–Appellant,

v.

Charles MILLER, Superintendent, Respondent–Appellee.

No. 94–3869.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 11, 1996.

Decided March 19, 1997.

Allen E. Shoenberger, Donald Sapienza, Law Student (argued), Chicago, IL, for petitioner–appellant.

Thomas D. Quigley, Robert L. Collins (argued), Office of Attorney General, Indianapolis, IN, for respondent–appellee.

Before COFFEY, RIPPLE and EVANS, Circuit Judges.

COFFEY, Circuit Judge.

Petitioner-appellant Randolph McGowan ("McGowan") was found guilty by a jury in an Indiana state court of three counts of defrauding a federally-insured financial institution, Indiana Code section 35–43–5–8, and he was sentenced to three consecutive terms of eight years. The Indiana Court of Appeals affirmed McGowan's convictions in an unpublished order, and the Supreme Court of Indiana denied review. McGowan's petition for a writ of habeas corpus alleged a number of constitutional violations, which were denied by the district court. McGowan appeals. We affirm.

## I. Background

McGowan's convictions arose from a "quick-change" scheme he perpetrated on three banks in Hendricks County, Indiana in June and July 1990. The scheme entailed McGowan approaching a teller, handing the teller a large denomination bill, and requesting a $2 roll of nickels in return. After the teller handed him the nickels and while she was counting out the remaining change, McGowan would state that he did not want to change such a large bill, and would give back the nickels in exchange for the large denomination bill. McGowan would then give the teller another bill of the same denomination he had originally changed, and receive in return (since the teller would think that the change she had been counting out was McGowan's) twice the amount, in smaller denominations, of the original bill. All the while, McGowan would be peppering the teller with questions designed to confuse and distract her. The teller would later learn that her cash drawer was short.

Detective Clark Fine ("Fine") of the Hendricks County Sheriff's Department conducted the investigation into the incidents at the three banks. In interviewing the witnesses, including the tellers at each of the banks, he ascertained that the perpetrator was a black male. In the course of his investigation, Fine also learned that a black male had attempted a similar "quick-change" theft at a Subway Sandwich Shop in Hendricks County. The Subway employee became instantly suspicious, and was very careful in counting out money so as not to come up short. The black male left the store, and the Subway employee followed, observing the make and model and license plate number of the car the man was driving. The Subway shop also had a security video camera, which recorded the entire transaction.

Investigators matched the license plate numbers given to them by the Subway employee with a plate observed by a witness near the scene of one of the bank fraud incidents. They obtained the address of the car's owner from the Bureau of Motor Vehicles, and determined that a black male (not McGowan), who was the boyfriend of the car owner's daughter, might have had access to the car, so they decided to investigate him as a potential suspect. Detective Fine then assembled a photographic array ("first array") of black men, which included the man Fine now considered a suspect in the case (but did not include McGowan), and displayed it to the witnesses.[1] None of the witnesses picked out any of the men in the first array, so Fine no longer considered his initial suspect as the perpetrator.

Next Detective Fine reviewed the Subway store's video and confirmed that his initial suspect was not the person in the video. He had a still photo made from the videotape, and returned to the residence of the person who owned the car observed at the Subway. He showed the picture to a woman at that residence (apparently the mother of the initial suspect), who stated that the man in the photo, whom she identified as "Rand," was the boyfriend of the car's owner. Fine was

unable at that time to obtain the suspect's full name from the woman, but he did learn that "Rand" was staying at the home of the woman who owned the car.

On August 8, Detective Fine obtained a warrant for Rand's arrest for the attempted theft of the Subway shop. Upon arriving at the residence where "Rand" was believed to be staying, Fine entered and observed a man who fit the description of Rand from the video reduced picture taken during the caper at the Subway shop. This man later identified as McGowan was then arrested and, after being advised of his rights, was questioned until he requested the assistance of counsel.

As McGowan was being led from the house at the scene of the arrest, Officer James Warren, a Marion County Sheriff's Deputy who assisted in McGowan's apprehension, remarked to the defendant that he was "in the bag ... you might as well tell these guys what they need to know and get it straight...." Warren also told petitioner McGowan that Detective Fine was a "nice guy and that it would be okay to tell [him] the truth." McGowan was not questioned thereafter, except as to inquiries concerning his identification. Detective Fine and another detective drove McGowan to the Hendricks County jail. En route, they stopped at a store for some soft drinks, and while Fine's partner went inside, Fine remained in the car with McGowan. During this time frame, McGowan initiated a conversation with Fine and made incriminating statements. Detective Fine testified and related these statements to the court:

Q.  Okay did any, did any uh, events happen on the way back to the jail?

A.  Yes, Mr. McGowan initiated a conversation with me.

Q.  Okay, do you recall at what point in time the drive back to the jail that he [McGowan] initiated some conversation?

A.  .... I stopped at the Crystal Flash station ... to get us a pop. Uh my part-

---

1. Fine was able to obtain a photo of the man he considered a suspect based on the man's prior arrest in Indianapolis, at which time his photo had been taken by Indianapolis police. Fine obtained all six of the photos of black males used in the first array from the Indianapolis Police Department.

ner went in to get us a Coke uh, Mr. McGowan asked of me, he said uh, "What specifically are you charging me with?" and I said, "I'm charging you with trying to steal money from the Subway Shop." And he said, "Which one?" and I said, "The one in Plainfield." And he said, "Is that the one next to the Wal–Mart?" and I said, "Yes it is." *And he said "Well I don't know how you can charge me with that because I didn't even get any money."* And I said "Well Mr. McGowan, that's for the Courts to decide."

Q. Okay, did Mr. McGowan initiate any other conversations?

A. He asked, uh, he asked if I had any other charges pending against him, or if we were going to try to go for anything else. I told him I was going to charge him with all the banks in Hendricks County that he'd quick changed.

Q. Okay and what was his response to that?

A. *He shook his head and kind of smiled and said "I don't think they can do that. They gave me money, I didn't take it from them."* Then I said again, "That's for juries to decide sir."

Tr. at 1002–03 (emphasis added).

After his arrest for the attempted theft of the Subway shop, McGowan's photograph was placed in a second photospread ("second array"), which was shown to the witnesses at the banks. The same five witnesses who had viewed the first array (plus two additional witnesses) individually viewed the second array. Four witnesses immediately identified McGowan, and a fifth witness, after initially identifying someone else, changed her mind and also identified McGowan. On cross-examination, two of the witnesses from the banks testified at trial that they believed that two photos from the first array were also included in the second array, but Detective

Fine testified unequivocally and repeatedly (both during the trial and at hearings on pre-trial motions) that he had returned *all* of the photos used in the first array to the Indianapolis Police Department prior to assembling the second array, and that no photos from the first array were used in the second array.

McGowan was charged with and tried for one count of attempted theft of the Subway shop, and three counts of defrauding a federally-insured financial institution. The jury found McGowan guilty of the three counts of bank fraud and acquitted him of the attempted theft charge.

## II. Issues

On appeal, McGowan argues that (1) he was deprived of his right to a speedy trial; (2) the second pre-trial array wherein the witnesses identified him was unduly suggestive; (3) the postarrest statements that McGowan gave to Fine were improperly admitted in violation of his right to counsel; and (4) the evidence submitted failed to establish that the defrauded banks were federally insured.[2]

## III. Discussion

### A. Speedy Trial

Initially McGowan argues that he is entitled to habeas relief because he was denied his right to a speedy trial under the Sixth Amendment of the United States Constitution. The district court determined that McGowan had failed to present his Sixth Amendment claim to the Indiana state courts during his direct appeal, since his argument with respect to the speedy trial issue "was developed in the state courts solely in the context of an argument that a violation of Indiana Criminal Rule 4(B) had occurred." D.Ct.Op. at 3 (emphasis added).[3] The dis-

---

**2.** Neither McGowan nor the Attorney General of Indiana argue application of the recently enacted Anti-terrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (1996). However, as our discussion will demonstrate, even under the standard utilized for review of habeas cases prior to the Act, McGowan's arguments fail.

**3.** Indiana Rule of Criminal Procedure 4(B) states that a defendant, upon motion, shall be tried within 70 days of that motion, with certain exceptions. The text provides in relevant part: Defendant in Jail—Motion for Early Trial. If any defendant held in jail on an indictment or an affidavit shall move for an early trial, he shall be discharged *if not brought to trial within seventy (70) calendar days from the date of*

trict judge concluded that, because McGowan had not presented his Sixth Amendment argument to the state courts, he thus failed to preserve the issue for review by a federal habeas court. We agree.

A federal court, reviewing a state court conviction, may grant habeas relief if the petitioner demonstrates that "he is in custody in violation of the Constitution or laws or treaties *of the United States.*" 28 U.S.C. § 2254(a) (emphasis added). *See also Del Vecchio v. Illinois Dep't of Corrections,* 31 F.3d 1363, 1370 (7th Cir.1994) (en banc) (" '[F]ederal courts can grant habeas relief only when there is a violation of federal statutory or constitutional law.' " (citation omitted) (emphasis added)).

■ Before a federal court reviews a habeas petition, the petitioner must: "(1) exhaust all remedies available in state courts; and (2) fairly present any federal claims in state court first, or risk procedural default." *Bocian v. Godinez,* 101 F.3d 465, 468 (7th Cir.1996) (citation omitted). The habeas petitioner must present his federal constitutional claims initially to the state courts in order to give the state the " 'opportunity to pass upon and correct alleged violations of its prisoners' federal rights.' " *Duncan v. Henry,* 513 U.S. 364, ——, 115 S.Ct. 887, 888 (1995) (quoting *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971) (internal quotation marks omitted)). In reviewing the district court's determination that McGowan failed to present a federal speedy-trial issue before the state court, we address the factors set forth in *Pierson v.*

*O'Leary,* 959 F.2d 1385 (7th Cir.1992), and consider whether he "(1) rel[ied] on pertinent federal cases employing constitutional analysis; (2) rel[ied] on state cases applying constitutional analysis to a similar factual situation; (3) assert[ed] the claim in terms so particular as to call to mind a specific constitutional right; or (4) allege[d] a pattern of facts that is well within the mainstream of constitutional litigation. . . ." *Id.* at 1393. As we noted in *Bocian,* "the presence of any one of these factors, particularly factors (1) and (2), does not automatically avoid a waiver; the court must consider the specific facts of each case." 101 F.3d at 469 (quoting *Verdin v. O'Leary,* 972 F.2d 1467, 1473–74 (7th Cir.1992)).

After reviewing McGowan's arguments to the Indiana state courts in light of the four factors set forth in *Pierson,* we conclude that he failed to adequately present the question of an alleged violation of his *federal* constitutional right to a speedy trial, and has thus waived it for purposes of habeas review. First, McGowan did not rely on pertinent federal cases to develop a constitutional argument. Indeed, despite having presented a thorough and lengthy argument on the alleged violation of his right under state law to a speedy trial in his state appellate brief, McGowan failed to make *any* argument based on federal case law in support of his speedy trial question.[4] Further, we have reviewed the Indiana state cases cited in McGowan's state appellate brief, and we fail

---

such motion, except where a continuance within said period is had on his motion, or the delay is otherwise caused by his act, or where there was not sufficient time to try him during such seventy (70) calendar days because of the congestion of the court calendar. Provided, however, that in the last-mentioned circumstance, the prosecuting attorney shall file a timely motion for continuance as set forth in subdivision (A) of this rule. Provided further, that a trial court may take note of congestion or an emergency without the necessity of a motion, and upon so finding may order a continuance. Any continuance granted due to a congested calendar or emergency shall be reduced to an order, which order shall also set the case for trial within a reasonable time.

**4.** McGowan's brief cites *Smith v. Hooey,* 393 U.S. 374, 378, 89 S.Ct. 575, 577, 21 L.Ed.2d 607 (1969), in support of the proposition that "[s]peedy trial guarantees result from the recognition that delays in going to trial may subject an accused to many adverse circumstances, including great emotional stress and uncertainty in trying to carry on with his life." St. Br. of McGowan at 28. It also cites *Strunk v. United States,* 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973), for the proposition that "a right to trial within seventy days serves a number of valuable purposes other than limiting the duration of pretrial incarceration." St. Br. of McGowan at 26. In the latter instance, it is clear that McGowan is explicitly referencing Indiana's 70–day requirement.

to discern any which apply Sixth Amendment analysis to a similar factual situation.[5]

McGowan's reliance on Ind.R.Crim.P. 4(B) was made clear on the very first page of his argument, where he sought to distinguish the argument he was making based on Ind. R.Crim.P. 4(B) from any potential constitutional claim: "The perimeters of [Rule 4(B)] are less flexible and more distinct as compared to the more general constitutional provisions for speedy trial." St. Br. of McGowan at 24. In sum, we conclude that McGowan failed to present the Sixth Amendment argument to the state court he now asks us to consider. We conclude that the district court did not err when it found that petitioner procedurally defaulted his Sixth Amendment claim.

### B. Photographic Array

McGowan next argues that the second array was so unduly suggestive that it deprived him of due process, for three reasons. First, he contends that two of the photos from the first array were included in the second array. McGowan claims that this "overlap" of photos had the effect of suggesting that the person who committed the bank frauds was depicted in the four new photographs, thus increasing the chance that McGowan would be picked. Second, McGowan argues that four of the six photographs in the second array depicted men much younger than himself and that, therefore, his likeness was emphasized over the others. Third and finally, McGowan argues that Detective Fine impermissibly suggested to a witness who initially did not pick McGowan from the second array that she had picked the wrong suspect and should try again.

■ In *Stewart v. Duckworth*, 93 F.3d 262 (7th Cir.1996), we recently reaffirmed the test we apply to a challenge to pretrial identification procedures:

The constitutionality of a challenged pretrial identification procedure is analyzed in two steps. First, the court must determine whether the procedure was "unnecessarily suggestive." Even if the procedure was "unnecessarily suggestive," the identi-

fication may still be admissible if "under the totality of the circumstances the identification was reliable even though the confrontation procedure was suggestive." *Neil v. Biggers*, 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972). In analyzing the totality of the circumstances, courts consider "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by witness at the confrontation, and the length of time between the crime and the confrontation." *Id.*

93 F.3d at 265. "Whether a pretrial identification procedure is unduly suggestive and whether a witness's subsequent identification is nonetheless reliable under the totality of the circumstances are two separate inquiries that should be approached sequentially[.]" *United States v. Johnson*, 859 F.2d 1289, 1294 (7th Cir.1988).

■ McGowan made all of the arguments he seeks to present to us before the state appellate court. That court rejected all of his arguments, on the ground that the pretrial identification procedures used in the second array were not unduly suggestive. The district court agreed, stating

the Court finds no plausible basis on which to pronounce the out-of-court identification suggestive in either content or procedure. The Indiana Court of Appeals reviewed the procedures used. The photos in the arrays were of reasonable likeness to the petitioner. There was no improper influence, either direct or subtle, used to 'suggest' McGowan as the suspect to the civilian witnesses. These are findings which are entitled to a presumption of correctness under § 2254(d). . . .

D.Ct.Op. at 6. The determination of whether an identification procedure is constitutional is a mixed question of law and fact to which the statutory presumption of correctness does not apply, but the state court's factual findings underlying the conclusion are presumed

---

**5.** We note that, despite accurately reciting the *Pierson* test in his brief, McGowan has not argued in this court that any of the Indiana cases cited in his state brief apply Sixth Amendment analysis to a similar factual situation.

correct unless unsupported by the record. See *Rodriguez v. Peters*, 63 F.3d 546, 554 (7th Cir.1995).

With respect to McGowan's argument that two photos from the first array were included in the second array, the state court observed that there was a conflict in the evidence concerning whether any of the photos from the first array were present in the second array. Two witnesses opined that two photographs from the first array were used in the second photographic lineup. Detective Fine testified to the contrary, stating unequivocally that he returned all of the photos from the first array to the Indianapolis Police Department before he assembled the second array. The state court did not find it necessary to resolve this evidentiary dispute, since it found that "there is no indication from the record that [the witness] made a misidentification. McGowan's counsel spent much time questioning [the witness] on the subject of the alleged duplicates and never obtained even a slight indication that the duplicates somehow highlighted McGowan's picture over the other new photographs. The evidence does not indicate a misidentification occurred." St.Ct.Op. at 10. Our review of the record likewise gives us no reason to believe that either of the witnesses who thought there might have been a duplication of photos between the first and second array misidentified McGowan.

■ With respect to McGowan's argument that the men depicted in the other photos in the second array were not sufficiently similar in appearance to him, the state court of appeals found that

all six photographs in the second array portray black males with short hair and mustaches. Four of the photographs depict men who appear to be younger than McGowan and one depicts a person of approximately the same age. *After examining the photographs, we cannot say the appearances of the men depicted are so different from McGowan that his picture is emphasized over any of the others.*

St.Ct.Op. at 10 (emphasis added). We have noted before that the "police are not required [in arranging a photographic display of suspects] to conduct a search for identical twins

in age, height, weight or facial features." *United States ex rel. Crist v. Lane*, 745 F.2d 476, 479 n. 1 (7th Cir.1984). We have viewed the second array and, although some of the photographs do depict men who may appear to be somewhat younger than McGowan, we, like the state appellate court, "cannot say that the appearances of the men depicted are so different from McGowan that his picture is emphasized over any of the others." St. Ct.Op. at 10.

■ Finally, with respect to McGowan's argument that Detective Fine impermissibly suggested to a witness that she should "try again" after picking someone other than McGowan out of the second array, the state court found that

When witness Ratliff first looked at the second array of photographs she hurriedly pointed to the picture of someone other than McGowan as the man who entered the bank. Detective Fine asked, "Are you sure?" (R. 558). *[Ratliff] independently decided to look more closely.* Her closer examination convinced her that her initial identification was in error. After her examination, she identified McGowan as the person who defrauded the bank.

... *Without any prodding*, Ratliff reviewed the array to make sure she was correct in her first identification. *She changed her mind on her own.* There was no misidentification.

St.Ct.Op. at 10–11 (emphasis added).

As this finding demonstrates, witness Ratliff testified that she understood Fine's question, "Are you sure?" not as a suggestion that McGowan was the suspect, but as an indication that perhaps her initial decision had been hurried and that she should take the time necessary to "be sure." McGowan is obviously unable to point to anything in the record that controverts witness Ratliff's own interpretation of Detective Fine's question. Remarks that were far more suggestive than Detective Fine's have been held permissible within the standards of due process. *See, e.g., United States v. Moskowitz*, 581 F.2d 14 (2d Cir.1978) (witness' viewing of photographs of a six-person lineup, after being told that her original choice was an FBI clerk and

that the other two witnesses selected the "right" individual was not unduly suggestive). We conclude that McGowan has not demonstrated that Detective Fine's question to Ratliff was suggestive and improper.

■ McGowan tries to raise additional claims concerning the reliability of the pretrial identification for the first time on appeal, but these issues have been waived because of his failure to present them to the state court, as required under section 2254 to give the court a "fair opportunity" to consider the claim. *Anderson v. Harless,* 459 U.S. 4, 6, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982); *Dortch v. O'Leary,* 863 F.2d 1337, 1342–43 (7th Cir.1988).[6] In sum, we conclude that the state court's findings are supported by the record and no unnecessarily suggestive procedures were used to assist the witnesses in identifying McGowan.[7]

### C. *Miranda* and *Innis* Issues

■ McGowan argues that the incriminating statements he made to Detective Fine should have been suppressed at trial because they were obtained in violation of his constitutional right to counsel, as set forth in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and *Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). The Sixth Amendment, as interpreted by the Supreme Court in *Miranda* and *Innis,* generally prohibits the custodial *interrogation* of a suspect *after he has requested the assistance of counsel.* However, as in the case before us, statements that are *volunteered* by an individual while in custody are not subject to exclusion from evidence under *Miranda. See, e.g., United States v. Edwards,* 885 F.2d 377, 385 (7th Cir.1989). Indeed, in *Miranda* itself, the court stated very clearly that "[v]olunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today."

*Id.* at 478, 86 S.Ct. at 1630; *see also Innis,* 446 U.S. at 300, 100 S.Ct. at 1689–90.

McGowan argues that the incriminating statements he made in the squad car were not "volunteered," but instead were made in response to interrogation by Detective Fine. McGowan did not testify at trial, but his counsel argues that the ride to the police station and the stop for soft drinks was a deliberate effort to continue interrogation tactics after he had invoked his right to the assistance of counsel. This characterization of events has no basis in the record. As noted previously, Detective Fine, when testifying about the conversation in the squad car, specifically stated that "Mr. McGowan initiated a conversation with me." The state court found that "Officer Fine did not subject McGowan to further questioning (other than questions about his name) after McGowan asked for the assistance of counsel. McGowan's incriminating statements came only after he initiated a conversation with Officer Fine while they were sitting in the police car." St.Ct.Op. at 22. Again, this finding of fact is presumed correct unless it is without support in the record, 28 U.S.C. § 2254(d), and McGowan has not pointed us to anything in the record which contradicts Fine's testimony. In effect, the court was asked to make a credibility determination concerning Detective Fine's characterization of events in the squad car, and the court resolved that question in favor of Fine's truthfulness. *Cf. United States v. Thomas,* 11 F.3d 1392, 1397 (7th Cir.1993). In light of Detective Fine's uncontradicted testimony that the defendant volunteered his statements while in custody, we are confident that the state court and the district court ruled correctly when they found no violation of *Miranda* or *Innis.*

### D. Admissibility of Evidence

■ McGowan was convicted under an Indiana statute which prohibits defrauding a "state or federally chartered or federally insured financial institution." Ind.Code § 35–

---

6. While we may review claims not presented before the state courts where the petitioner can demonstrate cause for his failure to present the arguments and prejudice from our refusal to review them, McGowan has not attempted to make such a showing. *See Rodriguez,* 63 F.3d at 555.

7. Since we conclude that no unnecessarily suggestive procedures were employed, we need not reach the question of whether the identifications were otherwise reliable in spite of the use of unnecessarily suggestive procedures. *See Stewart,* 93 F.3d at 265.

43–5–8(a).[8] No written documentation of the federally-insured status of the three institutions was introduced in evidence. However, each of the managers of the three institutions defrauded by McGowan testified that their respective institutions were in fact federally insured. Steven Ping, manager at Bank One in Avon, Indiana, testified that he was familiar with the regulations of the bank, including those required by the federal government. When asked if the deposits at his bank were federally insured, Ping responded "Yes, they are government insured." Tr. at 730. Marion Hofer, manager and assistant vice-president of the Citizens Bank in Plainfield, Indiana, testified in response to a question by the prosecution that she was familiar with federal law regulating her bank. When asked whether deposits at her bank were insured with the FDIC, Hofer answered "Yes, they are." Tr. at 859. Reba Presley, assistant manager and assistant vice-president of the Huntington National Bank in Danville, Indiana, testified that her bank was required to follow federal banking regulations. When asked whether deposits were federally insured under the FDIC, Presley answered "[y]es." Tr. at 904.

McGowan now argues that, since the only evidence of the banks' federally-insured status was the testimony of the three bank managers, which McGowan alleges to be hearsay, his convictions rest upon "[in]competent and [in]admissible" evidence that the banks in question were in fact federally insured or chartered. The state court held that "[t]he bank managers' testimonies were based upon their personal knowledge from their years of employment at their respective banks. Testimony from a witness regarding his own personal knowledge is not hearsay." St.Ct.Op. at 7 (citing *Baker v. State,* 439 N.E.2d 1346, 1349–50 (Ind.1982) and *Moore v. State,* 551 N.E.2d 459, 462 (Ind.Ct.App. 1990)).

Because we see no reason to address the admissibility of the managers' testimony un-

der the hearsay rule as delineated in Indiana law, we decline to do so. As we stated in *Gross v. Greer,* 773 F.2d 116 (7th Cir.1985):

evidentiary questions are not subject to review by a federal court in a habeas corpus proceeding by a state prisoner unless there is an error of such magnitude as to deny fundamental fairness.... In this area, federal courts must proceed with caution.... To hold otherwise would put federal courts in the role of reviewing courts over the courts of the states even when no constitutional errors have been made.

773 F.2d at 119 (citations omitted); *see also United States ex rel. Searcy v. Greer,* 768 F.2d 906, 910 (7th Cir.1985) ("Violations of state evidentiary laws generally do not form the basis upon which federal habeas corpus relief can be granted. A habeas proceeding concerns only whether federal constitutional rights were violated."). McGowan fails to explain how the admission of the three bank managers' testimony (based upon their personal knowledge) amounted to a denial of "fundamental fairness," such that we may take the extraordinary step of reviewing the state court's ruling on admissibility, so we decline to do so.

The district court did briefly address the "quality" of the evidence and concluded that the evidence was sufficient to establish that the banks were federally secured, and we agree with the district judge's common sense conclusion that the testimony of the bank managers, based upon their personal knowledge, adequately established that the banks were federally insured.

## IV. Conclusion

The district court's denial of McGowan's petition for a writ of habeas corpus is AFFIRMED.

---

**8.** Indiana Code section 35–43–5–8(a) provides in pertinent part:

A person who knowingly executes, or attempts to execute, a scheme or artifice:

(1) to defraud a state or federally chartered or federally insured financial institution; or

(2) to obtain any of the money, funds, credit, assets, securities, or other property owned by

or under the custody or control of a state or federally chartered or federally insured financial institution by means of false or fraudulent pretenses, representation, or promises; commits a Class C felony. representation, or promises; commits a Class C felony.