165 F.3d 34
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Cedric L. SHELTON, Defendant-Appellant.
 No. 98-1244.
 United States Court of Appeals, Seventh Circuit.
 Argued Oct. 9, 1998.
Decided Oct. 29, 1998.
 
 Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. No. 97 CR 408-1. Milton I. Shadur, Judge.
 Before Hon. JESSE E. ESCHBACH, Hon. ILANA DIAMOND ROVNER, Hon. DIANE P. WOOD, Circuit Judges.
 
 ORDER
 
 1
 Cedric Shelton was convicted of one count of armed bank robbery in violation of 18 U.S.C. § 2113 and one count of carrying a firearm during and in relation to a crime of violence in violation of 18 U.S .C. § 924(c)(1). Following a bench trial, the district court sentenced Shelton to 41 months' imprisonment on count one and to 60 months' on count two, to run consecutively. Shelton appeals his conviction, arguing that the district court (1) erroneously denied his pretrial motion to suppress photo array identifications made by three bank tellers and his request for a hearing on this matter; and (2) convicted him based on insufficient evidence. We affirm.
 
 
 2
 On May 8, 1997 at approximately 12:45 p.m., an armed gunman robbed Firstar Bank in Geneva, Illinois and escaped with $27,743. The three tellers working in the bank at the time of the robbery, Barbara Gettings, Rachel Beyer, and Emily Giblin, all described the undisguised gunman as being a slim, 20-25 year-old African-American male, 6' to 6'3"' tall, with a dark complexion, short dark hair, slight facial hair around the mouth, and wearing a dark baseball cap, jacket and pants. In fact, when the robber entered the bank, one or more of the tellers, including Gettings, thought he looked like the person described in a previously-distributed police flyer and suspected of having robbed other small area branch banks. Consequently, Gettings activated the bank's surveillance camera. The robber took money from all three bank tellers and, with a gun in his hand, ordered the tellers and a customer, Gilbert DeWilde, to get down on the floor. The robber then exited out the front door of the bank and drove away in a tan car.
 
 
 3
 Law enforcement officials investigating the robbery were not able to recover any physical evidence relating to the robbery. However, during the week following the robbery, the Federal Bureau of Investigations received an anonymous tip identifying Shelton as the robber. The FBI compiled a photo array of six African-American men matching the witnesses' descriptions of the robber, including Shelton, and showed it to the three bank tellers on May 16, 1997. All three tellers identified Shelton as the perpetrator and each was able to articulate her reasons for selecting Shelton. Giblin said that she was "pretty sure" of her identification because of the shape of the Shelton's face, eyes and nose, as well as his hair. Beyer said she was "positive" of her selection, noting that she remembered the eyes, nose and face of the man who had robbed the bank. Gettings said that although the robber had a darker complexion than Shelton's photograph suggested, the nose was the same.[1]
 
 
 4
 Shelton was arrested in connection with the robbery on June 12, 1997. He pleaded not guilty to the charges against him and filed a Motion to Suppress Suggestive Identification, which the district court denied. A bench trial ensued at which the government presented eye-witness testimony and introduced numerous receipts recovered from Shelton's home showing large cash expenditures commencing on May 8, 1997 (the day of the robbery) and ending on June 2, 1997. Among other things, the receipts reflected payments for a new Jeep Cherokee, eyeglasses, and delinquent bills, including past-due condominium assessments. The government also showed that Shelton was greatly in debt prior to May 8, 1997, and that he faced foreclosure on his condominium. Shelton's father and brother testified on Shelton's behalf and stated that Shelton always wore glasses. This testimony was intended to distinguish Shelton from the bank robber, who was not wearing glasses. The government countered this testimony, however, by showing that the glasses Shelton wore at the trial were purchased from Lenscrafters after the robbery and that Shelton told Lenscrafters during his eye examination that he wore contact lenses. Shelton's father and brother also testified that Shelton did not grow much facial hair, while the bank tellers described the robber as having facial hair. The government refuted this testimony with Shelton's photo array picture and Illinois driver's license, both of which depicted Shelton without eyeglasses and with facial hair matching the witnesses' descriptions.
 
 
 5
 The district court found Shelton guilty of robbery and using and carrying a firearm during and in relation to a crime of violence. In so doing, the court noted that although the government's case was built on circumstantial evidence, the government's evidence was "particularly well-knit." Specifically, the court found persuasive "the universal and uniform identification of Mr. Shelton as the perpetrator by each of the eyewitnesses to the offense." The district court also explained its reasons for permitting testimony concerning the photo array, including its finding that Shelton's photograph was not suggestive because it depicted neither his distinctively tall and thin physique nor the true hue of his skin. In addition, the district court found persuasive Shelton's highly-altered financial situation after May 8, 1997.
 
 
 6
 Shelton first argues on appeal that the district court erred in refusing to hold a hearing to rule on his motion to suppress the photo array shown to the three bank tellers on May 16, 1997, and in then refusing to suppress the photo array. According to Shelton, all the other photographs in the photo array depicted dark-skinned African-American males, while his photo portrays him as light-skinned. He also maintains that the tellers' identifications were unreliable because (1) their recollections were based on a previously circulated police flyer; (2) their attention was diverted due to fear; and (3) they did not have adequate time to view the offender. We review for clear error a district court's ruling to allow identification testimony stemming from a photo array. United States v. Moore, 115 F.3d 1348, 1359 (7 th Cir.1997); United States v. Funches, 84 F.3d 249, 253 (7 th Cir.1996).
 
 
 7
 In determining whether the district court committed clear error with respect to the tellers' identification testimony, this court engages in a two-part inquiry. "The defendant must first establish that the identification procedure was unnecessarily suggestive. If the defendant satisfies this burden, the court considers whether, viewed under a totality of the circumstances, the identification is reliable despite the suggestive procedure." United States v. Donaldson, 978 F.2d 381, 385 (7 th Cir.1992) (citations omitted); see also United States v. Sleet, 54 F.3d 303, 309 (7 th Cir.1995). However, if the defendant fails to demonstrate that the photo display was unreasonably suggestive, this court need not consider whether the identification procedure was reliable. Sleet, 54 F.3d at 309.
 
 
 8
 In this case, Shelton cannot establish that the photo array was unreasonably suggestive. The six men pictured in the array are all African-American males who appear to be of the same approximate age. Only the head and neck of each man is visible, so the pictures do not provide a basis for determining the physical build of each person. Moreover, each person has short, curly black hair and the same amount of facial hair. None are wearing glasses, and all have dark complexions. While Shelton appears to have lighter skin than four of the men depicted in the array (but not lighter than that of the sixth person shown in the array), in truth his own skin is darker than it appears in the picture. Thus, the over-exposure of his photograph can be viewed as a factor militating against a selection of Shelton and not, as Shelton maintains, a factor making his selection more likely. See Funches, 84 F.3d at 253; Sleet, 54 F.3d at 309. Any other differences between the photographs, such as different clothing, are not overly conspicuous. Shelton cannot expect a photo array consisting of persons with measurements and features identical to his own. Funches, 84 F.3d at 253. Indeed, this court has noted that " 'police are not required [in arranging a photographic display of suspects] to conduct a search for identical twins in age, height, weight or facial features ." ' McGowan v. Miller, 109 F.3d 1168, 1174 (7 th Cir.1997) (quoting U.S. ex. rel. Crist v. Lane, 745 F.2d 476, 479 n. 1 (7 th Cir.1984)). Since Shelton is unable to show how the photo spread singled him out for identification, he fails the suggestiveness prong of the two-part test set forth above. Accordingly, the court need not consider whether the identification procedure was reliable.
 
 
 9
 As for Shelton's contention that the district erred in refusing to hold a hearing prior to ruling on the suppression motion, this court has held that "[a] district court does not have to hold an evidentiary hearing on a motion just because a party asks for one." United States v. Sophie, 900 F.2d 1064, 1071 (7 th Cir.1990). Rather, "[a]n evidentiary hearing is necessary only if the party requesting the hearing raises a significant, disputed factual issue," the resolution of which is necessary to a ruling on the motion. Id.; United States v. Osborne, 931 F.2d 1139, 1163 (7 th Cir.1991). In this case, no disputed factual issue impeded the district court's ability to rule on Shelton's motion to suppress; consequently, its decision to rule on the photo array without first holding a hearing was not in error.
 
 
 10
 Next, Shelton argues that insufficient evidence supports his conviction. He predicates this argument on the lack of direct evidence linking him to the crime scene, including the absence of identifiable fingerprints or footprints recovered from the bank; the failure of the surveillance camera to capture the perpetrator's face; and the failure of law enforcement officials to recover any of the bait money planted among the $27,743 given to the robber. When reviewing a sufficiency of the evidence challenge, this court considers the evidence in the light most favorable to the government and defers to the credibility determinations of the trier of fact. United States v. Cueto, 151 F.3d 620, 630 (7 th Cir.1998); Moore, 115 F.3d at 1363. A verdict is overturned only when the record contains no evidence from which the trier of fact could find guilt beyond a reasonable doubt. United States v. Freland, 141 F.3d 1223, 1226 (7 th Cir.1998).
 
 
 11
 During trial, the government presented no direct evidence of Shelton's involvement with the Firstar Bank robbery. However, a bank robbery may be proved by circumstantial evidence. Moore, 115 F.3d at 1364. "If the government proves its case by circumstantial evidence, it need not exclude every reasonable hypothesis of innocence so long as the total evidence permits a conclusion of guilt beyond a reasonable doubt." Id. (internal quotations and citations omitted). In this case, the evidence as a whole supports Shelton's conviction. First, the three bank tellers (as well as DeWilde) positively identified Shelton as the robber from the photo array shown to them by law enforcement officials. DeWilde and the three tellers also positively identified Shelton in court. The district court found the witnesses' identifications to be believable and persuasive, and this court defers to credibility determination such as these. Second, the district court heard testimony from witnesses located outside of the bank who saw an African-American male in a baseball cap drive away from the bank in a tan car at the time of the robbery. They also testified that Shelton's car, a tan Mitsubishi Diamante, closely resembled the car they observed. Again, this is credibility testimony that is given deference on appeal. Third, the government showed that Shelton was in dire financial straits immediately before the robbery but was able to spend seven to eight thousand dollars immediately after the robbery. He was also in possession of approximately $800 in cash at the time of his arrest. This evidence is highly indicative of Shelton's participation in the Firstar robbery that the district court was well within its discretion to consider. See United States v. Ewings, 936 F.2d 903, 906 (7 th Cir.1991); United States v. Crisp, 435 F.2d 354, 360 (7 th Cir.1970).
 
 
 12
 For the foregoing reasons, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 DeWilde also identified Shelton as the robber. Shelton does not contest this identification on appeal, however