**STATE of Missouri, Respondent,**

v.

**Danny CLOSTERMAN, Appellant.**

**No. WD 34870.**

Missouri Court of Appeals,
Western District.

Feb. 13, 1985.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied April 2, 1985.

Application to Transfer Denied April 30, 1985.

Fred Duchardt, Public Defender, Peter M. Schloss, Asst. Public Defender, Liberty, for appellant.

John Ashcroft, Atty. Gen., Deborah Neff, Asst. Atty. Gen., Jefferson City, for respondent.

Before KENNEDY, P.J., and NUGENT and BERREY, JJ.

BERREY, Judge.

The defendant, Danny Gene Closterman, was convicted of manslaughter in the death of his three and one-half year old step-daughter, Colleen. The jury imposed a sentence of ten (10) years in the Missouri Department of Corrections. From this sentence defendant appeals and raises three points of trial court error: (I) insufficient evidence existed to support a guilty verdict, (a) because evidence established a number of possible causes of death, (b) because no credible or substantial evidence that defendant committed any act upon decedent causing her death existed in that the State established date and time of death as 1:49 p.m. on July 19, 1982. The State acknowledged that the only evidence of criminal agency attributable to the appellant was that he struck blows upon the decedent in the late evening of July 19, 1982; (II) the

trial court erred by not suppressing appellant's statements because they were not voluntary and there was no probable cause to arrest defendant in the first instance; (III) the Superior Court of Navajo County, Arizona, erred in refusing to issue a summons directing defendant's wife to attend and testify at trial in Missouri. The three page multi-faceted point is contrary to Rule 84.04.[1] It fails to state "briefly and concisely what actions or rulings of the court are sought to be reviewed." Nevertheless, an attempt is made herein to dispose of this point which pertains generally to out-of-state witnesses.

Initially the defendant errs in stating the time and date of the death of Colleen. The State's hypothetical to the pathologist accurately reflects the time and date of death as July 20, 1982 at 1:49 p.m., at least twelve hours after defendant stated he struck the child in her stomach with his fist. In addition, Officer Steve Duke, of the Kansas City, Missouri, Police Department, who responded to the emergency call, a defense witness, acknowledged the call and his response occurred on July 20, 1982.

Dr. Bonita Peterson, Jackson County Medical Examiner, stated unequivocally that the injury to the abdominal area was the cause of death. It should be pointed out that the decedent was three and one-half years of age and weighed approximately thirty pounds; that the defendant, her step-father, was a large man who weighed about two hundred twenty-five pounds and had large hands.

From a complete reading of the transcript there is no doubt that the little girl was terribly abused over a prolonged period of time. Defendant maintains that his wife, Colleen's mother, was the abuser. According to Joan Capps, defendant's sister, early in June, 1982, Colleen's arm had been burned from the shoulder to the elbow about halfway around, "It was pure red and no skin whatsoever." Mrs. Gail Thompson, a sister of defendant, had Col-

---

1. The point contained eighteen issues.

leen in her care the last week of June in 1982, and testified, "She was really quiet and her stomach was big and hard.... She drank an extra lot of water and didn't have a bowel movement while she was there, so I thought that was the reason that it [stomach] was hard." Thompson thought she was starving due to the bloated condition of the stomach and though she fed Colleen, Colleen could not keep the food down.

Craig Jones, a stranger to defendant, went to visit Mimi Wilson, a neighbor of the Closterman's when they lived in Phoenix, Arizona. While waiting at Mimi's door he heard a female child whine and an adult female tell her to "shut up" and then a couple of blows. It sounded like a whip and then smack to the skin and then a scream. This went on at least two minutes. The incident took place at the end of May or the first of June, 1982.

Mimi Wilson, testifying by deposition, acknowledged she was a neighbor of defendant and his wife and knew them for six months. They moved into an apartment across from her in January or February and left in June or July. Mimi stated she was aware of unusual activity in the defendant's apartment, "The abuse of Colleen." When they first started moving in Mimi observed Mrs. Closterman strike Colleen with her belt, heard Colleen crying, and Mrs. Closterman yelling and screaming. The episode lasted about ten minutes.

Grace Souder, next door neighbor of the Closterman's, in July, 1982, testified she observed Colleen at play and that despite the hot weather, Colleen did not have a lot of energy. She barely was able to walk. "And she was holding her stomach and she threw the little ball and she'd just barely pick it up. And finally she just sat down underneath the tree and held her stomach again."

On July 19, the defendant had been watching television with his wife Sherry. During the course of the evening he drank a couple of beers and several Jim Beam bourbons mixed with Pepsi. According to defendant, he had between three and six drinks. Sherry left to go for snacks. During her absence defendant went through Colleen's room to the bathroom and Colleen was awake. The following is excerpted from defendant's statement:

As I went in I saw her setting up in bed. She said, "Hi" to me, or something like that. I told her to lay down and go to sleep. Her bed was a mattress on the floor, and she should have already been asleep.... When I finished [in the bathroom] and came out, I asked Colleen why she didn't mind me, about laying down and going to sleep. She shrugged her shoulders and said she didn't know. I told her something like, for her to talk with me and to answer me. I asked her again, why she hadn't minded, and she said she didn't know, she just wanted to sit in bed. Then she was laying flat down on the mattress. I may have knelt over her, or beside her. I hit her with my fist several times, in the stomach. Then I found myself out in the hall, shaking and sweating. This has happened to me when I had hit her before....

The MAST Ambulance Company responded to the Closterman's home at 4151 North Hardesty to pick up a little girl named Colleen, "a non-breather." Attendant Klate picked up the child in the house and ran to the ambulance. The child was administered CPR and mouth to mouth resuscitation and taken to the emergency room at the North Kansas City Memorial Hospital, where further life saving techniques were employed, to no avail. The Clay County coroner was not available and the Jackson County Medical Examiner was contacted to perform the autopsy. The autopsy took place July 21, 1982.

Dr. Peterson stated she had:

Four diagnosis. The first one is the most important, blunt force abdominal injury, acute and chronic, with scarring and fat necrosis, especially in the region of the pancreas and root of mesentery; old blood in peritoneal cavity, apparently related to omental and mesenteric lacerations; recent hemorrhage along mesen-

teric border of small intestine and pericecal area, that's in (indicates) the region of the appendix. Both leafs of the diaphragm and focally in intercostal muscle. That's in the chest between the ribs.

The State then asked:

Q. Can you put that in lay language, doctor?

A. Okay, blunt force admoninal injury in the pit of the stomach causing the scarring and hemorrhage in various areas.

Dr. Peterson was asked if the injuries to the abdominal area caused the death, her plain answer was yes. She was asked:

Q. Do you have an opinion consistent with reasonable medical certainty of the cause of death?

A. Yes, it was my opinion that the child died as a result of blunt force injury to the abdomen.

Q. To the abdomen?

A. Yes.

The doctor testified that there was a causal connection between the blows to Colleen's stomach and her death. It would serve no purpose to detail the many other injuries that Colleen had had inflicted on her tiny body.

The trial court properly denied defendant's motion for acquittal because as alluded to there was ample evidence both direct and circumstantial viewed in light most favorable to the State to sustain the conviction. *State v. Mayes*, 654 S.W.2d 926, 928 (Mo.App.1983).

■ In each case we must review the evidence and determine whether the finding of guilt was supported by substantial evidence. The weight of the evidence is for the jury if the reviewing court can first find substantial evidence. *State v. Gregory*, 339 Mo. 133, 96 S.W.2d 47, 51 (1936); *State v. Mayes, supra*, at 928.

Dr. Peterson's medical opinion coupled with the corroboration evidence is sufficient to establish that defendant caused the death of Colleen. The evidence does not have to exclude other possibilities of the cause of death.

In appellate review of sufficiency of evidence, all evidence and inferences in the record tending to support the jury's finding the defendant guilty are accepted as true, and all contrary evidence and inferences are to be disregarded. *State v. Mondaine*, 655 S.W.2d 540, 543 (Mo.App.1983).

■ The State is required to prove the cause of death beyond reasonable doubt and may do so by circumstantial evidence. *Holtkamp v. State*, 588 S.W.2d 183, 188 (Mo.App.1979).

■ In the instant case there is ample evidence to demonstrate the victim died from a blunt force blow to the abdomen.

The prosecutor asked Dr. Peterson:

Q. Did you, from the examination do you have an opinion consistent with reasonable medical certainty of the cause of death?

A. Yes, it was my opinion that the child died as a result of blunt force injury to the abdomen.

The appellant alleges the State failed to accurately prove the date and time of death. Yet, Dr. Peterson acknowledged that the death occurred at 1:49 p.m. on July 20, 1982. Dr. Peterson also gave evidence that if Colleen had not suffered previous abuse the fact that appellant hit her in the stomach would not have resulted in her death. The combination of the old injuries and the blows defendant inflicted on July 19, 1982, was more than Colleen could endure.

Dr. Peterson's testimony reveals that Colleen endured extreme hardships for her three and one-half years. Dr. Peterson testified:

There was an abrasion of the nose and there was blood in the nostrils, which may have related to resuscitative attempts.

There were old scars on the knees and shins. There was three inch irregular smooth area of scarring of the upper arm. The abdomen was distended. On the back there were areas of depigmenta-

tion of the skin, in other words scarring, areas of scarring. Also there was a small abrasion on the left side of the mid-back.

There were some areas of old scarring, white, smooth surface scars on the right forearm near the elbow.

Upon opening the body cavity Dr. Peterson found:

There was about two hundred c.c.'s of old, brown liquid and semi-liquid blood free and also coating the surfaces of the intestines and the liver.

. . . .

There were multiple areas of laceration of the omentim and mesentery. And there were areas of ... fat necrosis, in other words disentigration of the fat representing injury with extensive scarring in the same area idicative of old injury.

. . . .

There was some damage under the capsular surface of the liver which represented injury also.

Dr. Peterson testified the injuries were not a "one time thing," and the scarring and hemorrhaging of various abdominal areas were, "multiple areas of trauma, or multiple incidents of trauma, episodes of trauma."

The doctor found no causal connection between the old injuries to the back, arm and nose with the death of Colleen. Accordingly, "the child died as a result of blunt force injury to the abdomen."

Appellant's Point I is denied.

■ The appellant was apprehended pursuant to a decision of Kansas City, Missouri, Police Department Officer Watts. The decision was based upon the fact that: the child was in the continuous custody of the Clostermans immediately prior to her death; that Dr. Rodas, the first physician to examine her found her dehydrated with a swollen stomach; that the autopsy itself revealed previous and present trauma; that a Phoenix, Arizona, officer upon hearing of Colleen's death from relatives in Arizona called Officer Watts and informed him that both Mr. and Mrs. Closterman were under investigation in Arizona for child abuse and fled Arizona while under investigation; and finally that Dr. Peterson "was ruling it a homicide, child abuse." Such information when taken together constituted probable cause for Watts to seek defendant's arrest.

At the suppression hearing and again at trial, the appellant raised issues of unlawful arrest and involuntary statements. In a complete and thorough recitation the trial court found that there was probable cause vis-a-vis the aforementioned facts that Watts was operating under, and that Closterman's rights against unreasonable search and seizure as guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution and Article 1, Section 15 of the Missouri Constitution were not violated.

■ Probable cause does not mean absolute certainty and the facts at hand justified the action taken by Watts. *State v. Morris,* 522 S.W.2d 93, 96 (Mo.App.1975).

The court held in *State v. Purnell,* 621 S.W.2d 277, 284–85 (Mo.1981), that the facts enumerated gave rise to probable cause, however, police may stop a person when they entertain a reasonable suspicion that criminal activity may be afoot. *Id.,* at 284.

"The reasonable suspicion that entitles an officer to stop an individual exists when the officer is able to point to specific and articulable facts which taken together with rational inferences from those facts reasonably warrant intrusion." *Id.,* at 285.

In *Brinegar v. United States,* 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949), the court stated, "In dealing with probable cause ... as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of every day life on which reasonable and prudent men, not legal technicians, act."

Appellant's motion to suppress his statements because there were not facts enough to establish probable cause for his arrest is without merit and ruled against him.

Appellant alleges that his statements were not freely and voluntarily given; that he did not make a knowing and intelligent waiver of his rights to remain silent and to counsel. Appellant also alleges he had suffered severe emotional shock, was coerced, undue influence was used to obtain his statement, and he was denied contact with friends and loved ones and denied food and sleep.

■ This court must give due regard to the trial court to judge the credibility of a witness. *State v. Dixon*, 655 S.W.2d 547, 554 (Mo.App.1983). The admission of a confession is within the trial court's discretion and will not be lightly disturbed. *State v. Flowers*, 592 S.W.2d 167, 170 (Mo. banc 1979).

■ As mentioned the trial judge was very thorough and complete in his decision regarding the defendant's motion to suppress. Further, trial counsel for defendant presented an exhaustive argument urging suppression.

The defendant was arrested in the parking lot of a shopping center at Parvin and Brighton (in Kansas City, Clay County, Missouri). At that time defendant was advised he was wanted in regard to a homicide. When he was so advised he became upset, emotional and cried. At this time Kansas City Police Detective Saunders "advised him of his rights with a Miranda card." From this point he was taken "downtown." Saunders was in the car with him during this trip and did not notice the odor of alcohol being present on defendant.

At the request of the Prosecuting Attorney, Officer Saunders read the Miranda warning, that he had given defendant off of his card, into the record. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).[2]

Officer Buckle, who made the initial stop of defendant in the parking lot, substantiated Saunders' testimony that defendant did not appear intoxicated, that he was, in fact, crying and had stated he was enroute to the funeral home. Sergeant Mitchell of the Kansas City, Missouri, Police Department also corroborated this fact.

Officer Merl, of the Kansas City, Missouri, Police Department conducted the interrogation of Closterman at police headquarters and received "background" information such as where he lived, where he grew up, number of siblings, etc. Merl next advised Closterman that the medical examiner had ruled Colleen's death a homicide. He provided Closterman with the "standard police department form that contains the Miranda warning." Closterman read this out loud and at trial Officer Merl read it into the record.

Merl stated that Mr. Closterman refused to sign the form because he was "afraid that I would put words in his mouth." However, he did make an oral statement. Merl testified Closterman did not ask for a lawyer, did not want to quit the questioning, and did not complain. He also testified that he did not detect the odor of alcohol on Closterman.

Following the oral statement Closterman was told that it would be typed up and his response was "that's fine." According to Merl both he and Closterman went to the typist. Merle dictated the story to her as Closterman had told him; Closterman was present and was advised to correct any mistakes or make additions as he chose. He was provided coffee and contacted a relative, Vicky Cousins, during this period. Following the preparation of the statement he read each page and signed the bottom of each page. Closterman denied abusing Colleen or hitting her in his first statement. Following this statement his wife and another woman appeared. He talked with the woman who accompanied his wife.

Subsequently, Detective Floyd Smith entered the interrogation room and inquired if Closterman had been given his rights per Miranda and was informed, "Yes, he has." Smith then recited, from memory, the Miranda warning to Closterman. The police then told Closterman they had information

**2.** All prosecutors are urged to follow this example.

that he had hit this "little girl" in the stomach. After a period of silence Closterman stated "he had struck Colleen in the stomach the night before she went to the hospital."

A second statement was then given by Closterman in which he stated that he had hit Colleen several times in the stomach with his fists and that he had hit her and slapped her on previous occasions.

The trial court found the statements "were given intelligently and voluntarily and knowingly and without the benefit of any undue coercion or force, threats, or promises."

The state has met the burden imposed by *State v. Haas*, 610 S.W.2d 68 (Mo.App. 1980), by establishing the statement was freely and voluntarily given without threat or promise.

Closterman was fully advised of his rights on at least three separate occasions. *Miranda v. Arizona*, supra.

■ It is not for us to second guess the trial court on matters of credibility. The trial judge is in a unique position to observe and hear a witness and we must defer to the trial court's decision regarding witness credibility unless it appears a manifest error has been committed. *State v. Crowley*, 571 S.W.2d 460, 465 (Mo.App. 1978); *State v. Riggs*, 586 S.W.2d 447, 449 (Mo.App.1979).

■ Voluntariness is determined by evaluating all the circumstances under which a statement was made. *State v. Craig*, 642 S.W.2d 98, 100 (Mo. banc 1982). The trial court did this in a detailed oral finding made at the suppression hearing. The defendant alleged he was suffering emotional shock. Such a showing "creates a jury question but does not preclude admission of an inculpatory statement." *Id.*, at 101. Under all of the evidence the trial court did not err in admitting the statements.

Point II is ruled against defendant.

Finally, defendant alleges the action of the Arizona court denied him confrontation with witnesses against him.

The defendant had requested that his wife, Linda (Sherry) Closterman, be summoned as a witness under the "Uniform Law to Secure Attendance of Witnesses from Within and Without a State in Criminal Proceedings," § 491.400, RSMo 1978, (herein referred to as "The Act").

The trial court issued the summons directed to a court of record in Arizona, witness Linda Closterman's home state, and deposited funds as required by Chapter 491, with the Arizona court. The Arizona court concluded that an "undue hardship to the witness to be compelled to attend and testify" would occur and denied Missouri's request.

According to a footnote in *State v. Sykes*, 611 S.W.2d 278, 281 n. 1 (Mo.App. 1980), the uniform act is not constitutionally mandated. The court there cited *People v. Cavanaugh*, 69 Cal.2d 262, 70 Cal.Rptr. 438, 444 P.2d 110 (1968) and *People v. McCartney*, 38 N.Y.2d 618, 381 N.Y.S.2d 855, 345 N.E.2d 326 (1976) as supportive of this position.

Closterman alleges the trial court erred by not personally phoning the Arizona judge and requesting the issuance of the summons, by not ordering the assistant prosecuting attorney of Clay County, Missouri to endorse Mrs. Closterman as a State's witness and not permitting hearsay testimony regarding what Mrs. Closterman would testify to if present.

■ Compulsory process usually runs only to those persons who can be located in its jurisdiction; constitutional provisions do not give a defendant the right to compel attendance of a witness from beyond its jurisdiction. *People v. Cavanaugh, supra; Washington v. Texas*, 388 U.S. 14, 17–19, 87 S.Ct. 1920, 1922–1923, 18 L.Ed.2d 1019 (1967); *State v. Pagels*, 92 Mo. 300, 4 S.W. 931 (1887); *State v. Butler*, 67 Mo. 59 (1877); *State v. Ivory*, 609 S.W.2d 217 (Mo. App.1980).

■ Following a hearing on "The Act" the trial court shall enter an order requir-

ing a witness to appear in a requesting state if it finds, (1) witness is material and necessary to criminal or grand jury proceeding, (2) no undue hardship bestowed on witness by attending proceeding in sister state, and (3) witness protected from arrest and civil process in demanding state and all states through which witness must pass. *Ex parte Armes*, 582 S.W.2d 434, 438 (Tex. Ct.Cr.App.1979).

Oregon has addressed this question in *State v. Blount*, 200 Or. 35, 264 P.2d 419, 428 (1953). There the court noted that in a proceeding under "The Act" the requisite of materiality could only be made on the basis of an affidavit or other competent evidence which sets forth to what the proposed witnesses would testify; a court was not justified in issuing a certificate for a witness if there was *no evidence* as to materiality.

In the instant case the defendant filed a bare motion requesting a certificate issue for Linda Closterman. The trial judge acted favorably on this motion.

 Since the uniform act contemplates the testimony sought is material it should be shown on the certificate of the demanding state or else by separate proceedings on the certificate in the requesting state. *Commonwealth v. Edgerly*, 6 Mass.App. 241, 375 N.E.2d 1, 11–12 (1978).

■ That the Arizona court subsequently determined that undue hardship would be placed on Linda Closterman by ordering her to return to Missouri as a witness cannot be attributed to the Missouri trial judge or the prosecuting attorney.

The court in *U.S. v. Bolden*, 461 F.2d 998 (8th Cir.1972), observed "clearly the government cannot be required to be successful in its efforts to subpoena witnesses in every instance. All that is required is a good faith effort to secure service of process." Certainly a good faith effort was made by the circuit court of Clay County to secure Linda Closterman's attendance.

Finally, in *State v. Ivory, supra,* the court made the following observations:

Though obscure, defendant's point may also be read as complaining that

because defendant failed to comply with § 491.020 the court should have found some other means of procuring the attendance of the witnesses. The defendant claims that the failure to do so deprived defendant of his right to compulsory process under the Sixth Amendment to the United States Constitution and Article I, Section 18(a) of the Missouri Constitution. We cannot agree.

In the instant case the certificate was issued to Arizona and the Arizona court found an undue hardship would be placed on Linda Closterman by issuing the summons. The defendant would have the trial judge personally intervene. However, the court has no duty to enforce its process *sua sponte. State v. Mixen,* 426 S.W.2d 92, 94 (Mo.1968).

The trial judge relied upon the Arizona decision as a matter of comity. The fact that defendant was aggrieved by the Arizona decision should have been pursued in Arizona courts.

Point III is denied.

Judgment affirmed.

All concur.