Kenneth Ray **DILLINGHAM,**
Appellant,

v.

**COMMONWEALTH of Kentucky,**
Appellee,

**Robert Jurell Hicks, Appellant,**

v.

**Commonwealth of Kentucky, Appellee.**

Nos. 98–SC–428–MR, 98–SC–429–MR.

Supreme Court of Kentucky.

June 17, 1999.

As Corrected July 13, 1999.

Susan Jackson Balliet, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, for appellant Dillingham.

David T. Eucker, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, for appellant Hicks.

Albert B. Chandler, III, Attorney General of Kentucky, Shawn C. Goodpaster, Assistant Attorney General, Perry T. Ryan, Assistant Attorney General, Frankfort, KY, for appellee.

JOHNSTONE, Justice.

Appellants, Kenneth Ray Dillingham and Robert Jurell Hicks, were convicted respectively of first-degree robbery and complicity to first-degree robbery. Dillingham and Hicks were sentenced to twenty years' imprisonment. We affirm both convictions and Dillingham's sentence. However, because palpable error was committed during the sentencing phase of Hicks's trial, we reverse his sentence and remand for a new sentencing hearing.

The Edmonton State Bank in Center, Kentucky, was robbed at 11:30 a.m. on December 1, 1997. A neatly-dressed man walked into the bank and handed a note to a clerk, Clifton Thompson. The note read, "This is a robbery. Don't push any buttons or call the police." The man stated that he had a gun. However, according to the testimony at trial, no witness actually saw a weapon.

A bank employee, Bernice Wisdom, emptied the teller drawers and handed the contents to the robber pursuant to his demands. The man placed the money in a briefcase with his left hand while keeping his right hand in his pocket. The man exited the bank, got into the passenger side of a waiting light blue Lincoln Town Car, and fled the scene.

## I. DIRECTED VERDICT

■ Both Dillingham and Hicks argue that they were entitled to a directed verdict of acquittal. "On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal." *Commonwealth v. Benham*, Ky., 816 S.W.2d 186, 187 (1991). Upon review of the record, the jury's verdict of guilt for each appellant was not clearly unreasonable.

### DILLINGHAM

■ Bank employees Clifton Thompson and Bernice Wisdom positively identified Dillingham as the man who robbed the Edmonton State Bank. Further, a customer testified that he saw Dillingham in the bank just prior to the robbery. Next, while no witness testified that he or she saw a weapon, there was sufficient evidence adduced at trial to convict Dillingham of first-degree robbery.

■ Reference to a deadly weapon coupled with a contemporaneous demand for money or other valuables is sufficient to withstand a motion for directed verdict of acquittal on a charge of first-degree robbery. *Swain v. Commonwealth*, Ky., 887 S.W.2d 346, 348 (1994). Dillingham handed Thompson a note that stated, "This is a robbery. Don't push any buttons or call the police." Thompson testified that Dillingham told him that he had a gun. Moreover, Dillingham kept his right hand in his pocket at all times as if the pocket contained a gun. There was no error.

### HICKS

■ Almost $13,000 was stolen from the bank which included a number of twenty dollar bills in "bait money," which are bills that the bank keeps a record of the serial numbers. The bait money only is to be removed from the drawer during the course of a robbery in order to facilitate capture of the robber. Wisdom testified that on the day of the robbery each of the three teller drawers at the bank contained $200 in bait money. She further testified that she emptied all three teller drawers and handed the contents to the robber.

A search of Hicks's residence uncovered a coffee can filled with over $4,000 in currency of different denominations. Included with this currency were thirteen twenty dollar bills, the serial numbers of which matched the serial numbers of some of the bait money stolen from the bank. Additionally, Hicks's wallet contained over $1,000 in cash, including a twenty dollar bill the serial number of which matched one of the serial numbers on the bait money list. Finally, a search of Hicks's vehicle produced a set of clothes that were identified in court by two witnesses as being the same or similar to the clothes worn by the bank robber. The search also uncovered a Kentucky road map folded to show the Edmonton area.

■ While the evidence against Hicks was circumstantial, it is well settled that a jury may make reasonable inferences from such evidence. *Blades v. Commonwealth*, Ky., 957 S.W.2d 246, 250 (1997). A burglary conviction was upheld on somewhat similar evidence in *Jackson v. Commonwealth*, Ky., 670 S.W.2d 828 (1984), *cert denied*, 469 U.S. 1111, 105 S.Ct. 791, 83 L.Ed.2d 784 (1985).

> The possession of stolen property is prima facie evidence of quilt of theft of the property. Where there is a breaking and entering and property taken from a dwelling and the property is found in possession of the accused, such showing makes a submissible case for the jury on a charge of burglary. Because the evidence is sufficient to support a conviction that appellant stole the property which was taken in a break-in, it follows that the evidence supports a jury finding that said appellant committed the burglary in which the property was stolen.

*Id.* at 830 (internal citations omitted).

Hicks was in possession of currency taken during the robbery. It was not clearly

unreasonable for the jury to find Hicks guilty of complicity to first-degree robbery on the evidence presented.

## II. WITNESS SEATED AT COUNSEL TABLE

■ During the course of the trial, Detective Antle sat at the counsel table with the Commonwealth Attorney. Antle was the officer in charge of investigating the robbery. Both Hicks and Dillingham argue that Antle should have been separated from trial pursuant to KRE 615 because the Commonwealth failed to show that Antle's presence was essential to the Commonwealth's case as required by KRE 615(3). We disagree.

The error alleged in this case is identical to that raised in *Justice v. Commonwealth*, Ky., 987 S.W.2d 306 (1999). In *Justice*, we held that it was proper to allow the lead investigator in that case to sit at counsel table pursuant to KRE 615(2), which states:

At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses and it may make the order on its own motion. *This rule does not authorize exclusion of:*

. . . .

(2) *An officer or employee of a party which is not a natural person designated as its representative by its attorney[.]*

*Id.* at 315 (emphasis added). There was no error.

## III. NO INVESTIGATOR

■ By letter to the trial judge, Hicks and Dillingham made a one line request for an investigator. The letter stated in pertinent part, "We also respectfully request that a private investigator be appointed for us." As noted by the trial court, an *ex parte* letter to a judge is not a substitute for a properly presented motion. Thus, the issue was never properly before the trial court and is not preserved for review. Nonetheless, we feel it appropriate to reach the merits of the issue based on the particular facts of this case.

■ Even though the trial judge stated that the court only would entertain properly presented motions, the trial judge did hear arguments on most of the issues raised in the letter in question. This was acknowledged by the trial court in writing: "This case is before the Court on numerous motions filed by the defendants, *pro se*, and letters written to the Court which in some instances the Court will consider as motions in the above actions." *Order*, dated March 3, 1998. Finally, Appellants proceeded at trial *pro se*, in which case they are not to be held to the same standards as legal counsel. *Beecham v. Commonwealth*, Ky., 657 S.W.2d 234, 236 (1983).

KRS 31.110 states in pertinent part:

(1) A needy person who is being detained by a law enforcement officer, on suspicion of having committed, or who is under formal charge of having committed, or is being detained under a conviction of, a serious crime, is entitled:

. . . .

(b) To be provided with the necessary services and facilities of representation including investigation and other preparation. The courts in which the defendant is tried shall waive all costs.

■ Under the rule, necessary services are those that are reasonably necessary. *Hicks v. Commonwealth*, Ky., 670 S.W.2d 837, 838 (1984), *cert. denied*, 469 U.S. 1040, 105 S.Ct. 521, 83 L.Ed.2d 409 (1984). Review of a trial court's denial of funds under the statute is abuse of discretion. *Sommers v. Commonwealth*, Ky., 843 S.W.2d 879, 888 (1992). Further, on appeal, our review of a trial court's denial of funds pursuant to KRS 31.110 is limited to the reasons actually presented to the trial court. *See Simmons v. Commonwealth*, Ky., 746 S.W.2d 393, 395 (1988), *cert. denied*, 489 U.S. 1059, 109 S.Ct. 1328, 103 L.Ed.2d 596 (1989).

■ Even though the standards are relaxed for *pro se* litigants, nonetheless, *pro se* "pleadings must give at least fair

notice of the claim for relief to be sufficient." *Beecham,* 657 S.W.2d at 236. In the case at bar, Hicks and Dillingham in no way established in the letter or in argument before the trial court that funds for an expert were reasonably necessary. There was no error.

## IV. RIGHT TO CONFRONT OUT-OF-STATE WITNESSES

■ Hicks moved the trial court to certify four Indiana residents as material witnesses pursuant to the Uniform Act to Secure the Attendance of Witnesses from Within or Without a State in Criminal Proceedings ("the Uniform Act"), which is codified at KRS 421.230–270. The motion was granted, and the certification was forwarded to the appropriate court in Indiana. We note that the certification included the grounds upon which the Kentucky trial court found each witness to be material. Subsequently, three days before the trial was to begin, the Superior Court, Criminal Division of Marion County, Indiana, entered an order which found: (1) that two of the witnesses were not material; and (2) that ordering the two witnesses to attend the Kentucky trial would cause them undue hardship. Additionally, the order found that another witness had not been properly subpoenaed by the Commonwealth. It is not clear from the order what the Indiana court meant by this last finding. The order makes no mention of the fourth witness; however, that witness did testify at trial.

■ The Uniform Act is a reciprocal statute that provides a mechanism for a party to a criminal proceeding to compel attendance of out-of-state witnesses. It has been adopted by all fifty states, Puerto Rico, and the Virgin Islands. The Uniform Act requires, as a first step, that a motion be made with the trial court to certify a witness as being material and necessary to the proceeding. KRS 421.250(1). The proponent of the witness has the burden of showing materiality. *Mafnas v. State,* 149 Ga.App. 286, 254 S.E.2d 409, 412 (1979). The certification should state the facts upon which the trial court found the witness to be material and/or a summary of the witness's anticipated testimony. *See State v. Closterman,* 687 S.W.2d 613, 621 (Mo.Ct.App.1985). If certified, the certification is forwarded to a court of record in which the witness is found. KRS 421.250(1).

Once the certification is presented to a court of record in which the witness is found, that court "shall fix a time and place for a hearing, and shall make an order directing the witness to appear at a time and place certain for the hearing." KRS 421.240(1). While the trial court in the requested state must make an independent determination as to whether the witnesses is material and as to whether compelling the witness to attend would cause undue hardship, "[i]n any such hearing the certificate shall be prima facie evidence of all the facts stated therein." KRS 421.240(2).

Hicks argues that the Indiana court failed to conduct a hearing as required by the Uniform Act, failed to make findings as required by the Act, and failed to treat the Kentucky trial court's certification of materiality as "prima facie evidence" of the witnesses' materiality. These errors, he argues, violated the Sixth Amendment's Compulsory Process Clause.

■ We cannot consider as error on appeal the actions of a court from a foreign jurisdiction. The Indiana court's findings of non-materiality and undue hardship are beyond our powers of review. Moreover, the breadth of a defendant's right to compulsory process is no wider than the jurisdictional reach of the sovereign in which the defendant is tried. The Commonwealth has no power to subpoena witnesses over which it has no jurisdiction. *Hey v. Emerson,* Ky., 142 Ky. 767, 135 S.W. 294 (1911). Further, this jurisdictional limitation on a state's ability to compel the attendance of witnesses in a criminal trial does not violate the right to due process of law under the Fourteenth Amendment. *Minder v. Georgia,* 183 U.S.

559, 562, 22 S.Ct. 224, 225, 46 L.Ed. 328 (1902).

The trial court certified the witnesses in question as being material and necessary to the criminal proceeding in the case at bar. Further, the trial court included with the certification a statement of facts supporting its conclusion that the witnesses were material. During the trial, Hicks never brought the Indiana court order to the attention of the trial court, nor did he inform the trial court that these witnesses were not present in court. There is no action or inaction by the trial court for us to review. There is simply nothing for us to consider.[1] There is no error.

### V. WITNESS IDENTIFICATIONS

■ The police showed the witnesses to the bank robbery an array of six photographs, which included a photograph of Dillingham. Dillingham moved the trial court to suppress any witness identifications derived from the photo array. After an extensive suppression hearing, the trial court found that the array was not unduly suggestive and denied the motion.

■ "A conviction based on identification testimony following pretrial identification violates the defendant's constitutional right to due process whenever the pretrial identification procedure is so 'impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.' " *Thigpen v. Cory,* 804 F.2d 893, 895 (6th Cir.1986), *cert. denied sub nom. Foltz v. Thigpen,* 482 U.S. 918, 107 S.Ct. 3196, 96 L.Ed.2d 683 (1987), quoting *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). The determination of whether the in-trial use of identification testimony violates due process involves a two-step process. *Id.* First, the court examines the pre-identification encounters to determine whether they were unduly suggestive. *Id.* If so, "the identification may still be admissible if 'under the totality of the circum-

stances the identification was reliable even though the [identification] procedure was suggestive." *Stewart v. Duckworth,* 93 F.3d 262, 265 (7th Cir.1996), quoting *Neil v. Biggers,* 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972).

In the case at bar, the trial court determined that the photo array was not unduly suggestive and, thus, it never reached the second step of the test. The trial court noted that "it is clearly apparent that all six photographs are similar. The individuals in each photo are not only physically similar but are also clearly in custody." We have reviewed the photographs and agree with the trial court's assessment. Further, the trial court noted that the photograph of Dillingham does *not include any information regarding the crime charged or the date of the crime.* Dillingham's argument on appeal that he is displayed more prominently in his photograph than the persons in the other photographs is not persuasive. Nor is his argument that the other persons depicted in the photo array are substantially dissimilar to him in appearance. There was no error.

### VII. SENTENCING

■ The only evidence presented during Hicks's sentencing hearing was the testimony of Jerome Melton, an employee of the Department of Corrections. Melton's testimony relied upon a computer printout from the National Crime Information Center (NCIC). The NCIC printout was not certified as required by KRS 422.040. Nor did the Commonwealth lay the proper foundation to introduce the contents of the printout as a business record exception to the hearsay rule. *See* KRE 803(6), 902(11). Further, Melton testified as to both arrests and convictions. Hicks made no objection to this testimony.

The introduction of the NCIC printout in this manner was clearly improper. *See*

---

1. Of course, Hicks could have preserved the error. For example, he could have requested a continuance pursuant to RCr 9.04, the deni-

al of which would have been within our scope of review.

*Robinson v. Commonwealth,* Ky., 926 S.W.2d 853, 854 (1996). By singularly arguing that the issue is not properly preserved for review, the Commonwealth all but concedes error. This leaves us with the question of whether the error was palpable. RCr 10.26.

The jury sentenced Hicks to the maximum sentence of twenty years' imprisonment. The only evidence introduced during the sentencing phase was the contents of the NCIC report. Of course, the jury is allowed to consider in the penalty phase any and all of the evidence introduced during the guilt or innocence phase of the trial. Nonetheless, upon review of the entire case, we conclude that there is a substantial possibility that Hicks would not have received the maximum punishment had the NCIC report been objected to and excluded from evidence. *See Partin v. Commonwealth,* Ky., 918 S.W.2d 219, 224 (1996).

For the reasons set forth above, the convictions of Dillingham and Hicks are affirmed. Dillingham's sentence is affirmed. However, Hicks's sentence is reversed and the case is remanded for a new sentencing hearing.

LAMBERT, C.J.; COOPER, GRAVES, KELLER, and STUMBO, JJ., concur.

WINTERSHEIMER, J., concurs in part and dissents in part by separate opinion.

WINTERSHEIMER, Justice, concurring in part and dissenting in part.

I concur with the affirmance by the majority of the conviction of both Dillingham and Hicks, as well as the sentence imposed on Dillingham. However, I must respectfully dissent from that part of the majority opinion that reverses the sentence imposed on Hicks because I believe there was sufficient evidence to fix the sentence and that the error described by the majority is not palpable error as contemplated by RCr 10.26.

I cannot agree that upon a review of the entire case, this Court should conclude that there is a substantial possibility that Hicks would not have received the maximum punishment in the absence of the NCIC report. Consideration of the entire case indicates that there is no substantial possibility that the result would have been any different if the irregularity is held to be nonprejudicial. *Cf. Abernathy v. Commonwealth,* Ky., 439 S.W.2d 949 (1969); RCr 9.24.

As I noted in my dissent to *Robinson v. Commonwealth,* Ky., 926 S.W.2d 853 (1996), it appears that this Court is not quite ready to fully trust the advances of the electronic age as demonstrated by the NCIC reports. Clearly, a prudent prosecutor must now exemplify such printouts pursuant to the decision in *Robinson.* This case was tried in 1998, two years after the *Robinson* decision. Although I may not agree with the result of *Robinson,* those practicing in the courts of the Commonwealth must give it proper deference.