Svetlana LOKK, Appellant

v.

CMI, INC. (Real Party in Interest), Appellee

NO. 2013–CA–000661–MR

Court of Appeals of Kentucky.

RENDERED: FEBRUARY 27, 2015; 10:00 A.M.

BRIEFS FOR APPELLANT: Clay Wilkey, Owensboro, Kentucky

BRIEFS FOR APPELLEE: Alan C. Triggs, Owensboro, Kentucky

BEFORE: DIXON, J. LAMBERT, AND TAYLOR, JUDGES.

## OPINION

J. LAMBERT, JUDGE:

This appeal [1] arises from an order of the Daviess Circuit Court ruling on a motion to enforce a certificate and order from a Georgia state court regarding electronic discovery pursuant to Kentucky's Uniform Act to Secure the Attendance of Witnesses from Within or Without a State in Criminal Proceedings (the Uniform Act), Kentucky Revised Statutes (KRS) 421.230 to 421.270. Having carefully reviewed the record and the parties' arguments, we affirm.

Lokk, along with two other Georgia residents, Marcus Katnik [2] and Nkula Kyabua, [3] initially commenced a joint action in the Daviess Circuit Court on September 6, 2012, with the filing of a Petition for Issuance of Subpoenas under the Uniform Act along with a request for a hearing pursuant to KRS 421.240(1). The three petitioners requested the circuit court to issue subpoenas for one or more witnesses who reside in, or whose principal place of busi-

---

1. Seven other appeals addressing the same or similar issues were filed with this Court at the same time in April 2013. Four appeals were dismissed prior to the assignment of this case to the merits panel. Three other appeals were consolidated with the above-styled appeal and assigned to the same merits panel. These appeals were dismissed as moot by order entered December 5, 2014. The same order permitted the late filing of the remaining appellant's amended brief.

2. Katnick was voluntarily dismissed as a petitioner because his case had been closed in the State of Georgia; therefore, we shall not discuss his case any further.

3. Kyabuta's appeal (2013–CA–000660–MR) was dismissed as moot by this Court on December 5, 2014.

ness is in, Daviess County, Kentucky, and who had been determined to be material and necessary in their pending drunk driving criminal prosecutions in the State of Georgia. CMI, Inc., is a Kentucky corporation with a principal place of business in Owensboro, Daviess County, Kentucky. CMI manufactures the Intoxilyzer 5000, which is used in Georgia to perform breath tests of accused DUI suspects. The petitioners were seeking the source code for the Intoxilyzer 5000 to support their respective defenses. The petitioners stated that, in each case, a judge in the State of Georgia had certified under seal that there was a criminal prosecution pending and that CMI was a material witness in the prosecution. In following with KRS 421.240(2), the petitioners requested that the court issue a summons instructing the witness—CMI—to attend a hearing to permit the court to make the proper determinations according to the statute.

The Georgia certificates were attached to the petition.[4] Lokk's prosecution arose out of the State Court of Gwinnett County, and was assigned case no. 12–D–00698–S5. She had been arrested on May 6, 2011, and charged with DUI based upon the results of the Intoxilyzer 5000 breath test that had been administered. In the order granting her motion for a certificate of materiality entered July 18, 2012, the Georgia court made the following findings of facts related to the materiality of the source code she was seeking:

The source code is material and necessary evidence in this case because:

1. The breath results from the Intoxilyzer 5000 are often the sole determinant of guilt or innocence in a DUI *per se* case.

2. Any error in calculations and analysis by the Intoxilyzer 5000 may result in the conviction of an innocent defendant.

3. A computer controls the Intoxilyzer 5000.

4. That computer runs a set of programming instructions known as source code in its human readable form.

5. Problems with the source code will result in breath testing result problems, such as unexplained readings, falsely high readings due to failure to detect mouth alcohol, volume sample irregularities, and false reports that a defendant refused testing.

6. In any piece of software programming of the length of the Intoxilyzer 5000, errors are bound to occur and this fact is common knowledge in the computer science profession.

6. Testing of the Intoxilyzer 5000 without the source code will not reveal all potential errors within the machine.

7. A review of the source code of the Intoxilyzer 5000 is necessary to ensure a fair trial for the Defendant.

Based upon these findings made from affidavits and proffers by the defendant as well as recent court rulings, the Georgia court found that the source code of the Intoxilyzer 5000 was material and that CMI was a material witness. The court authorized Lokk to seek an out-of-state subpoena for witnesses and evidence from CMI, including the source code of the Intoxilyzer 5000. The Georgia court entered the certificate of materiality on August 22, 2012, stating that the "source code" and "object code" of the Intoxilyzer 5000 were "critical features of the forensic breath machine that the Defendant has called into question." Digital versions of the software and firmware were needed to test the source code. The court indicated that it

---

4. We shall only discuss the facts arising out of Lokk's prosecution and petition.

would enter a protective order to protect CMI's trade secrets. The court also indicated that a hearing on the source code and trial were to be scheduled.[5]

On February 11, 2013, CMI filed a motion for a protective order, arguing that the certificate and order Lokk was seeking to enforce were deficient on their faces, and the petition was subject to dismissal as a matter of law. CMI, however, stated that it had agreed to waive these defects, and it proposed that the court issue a protective order, which was consistent with its position regarding other Uniform Act certificates filed in the court from Montana, Florida, Arizona, and Georgia. CMI stated that the circuit court had previously approved the same type of protective order in Uniform Act cases arising from Montana and Georgia. CMI went on to demonstrate that the Georgia certificate and order were defective because 1) they were not under any seal of the court, but were merely certified copies, and 2) they did not provide a specific date and time for a specific hearing. CMI then argued that discovery of CMI's source code was not a "material witness" to Lokk's criminal case. It was not directed to any existing claim or defense in the criminal trial. Rather, CMI contended that Lokk "simply seeks discovery of the source code, in hopes that a generic challenge to the Intoxilyzer 5000 may somehow be possible once examination of the source code is completed." Further, CMI argued that it was not a necessary witness in Georgia, nor was evaluation of the source code necessary to determine the reliability of the Intoxilyzer

5000. Finally, CMI argued that it would be a hardship for it to provide the source code without a protective order in place. However, CMI stated that it was willing to disclose the electronic source code pursuant to a protective order. CMI tendered two proposed orders: one relating to the procedural and substantive defects in the Georgia orders, and one including the protective order.

In her response, Lokk argued that granting CMI a protective order would deny her statutory right to a hearing on necessity and materiality, violate her constitutional rights, exceed the court's subject matter jurisdiction, and create conflicting law between Kentucky and Georgia. Rather, she argued that the court should confine its ruling to whether CMI was a material and necessary witness, whether it would cause undue hardship for CMI to go to Georgia, and whether Georgia could adequately protect CMI's right to serve as a witness without civil process or arrest, all pursuant to the Uniform Act. She stated that she was entitled to be heard on whether the source code was necessary and material to her cases, among other issues. Lokk specifically requested a full hearing to determine these issues.

In reply, CMI asserted that the circuit court had scheduled a hearing to review the sufficiency of the certificate, which CMI stated it must first decide before holding a subsequent hearing to determine the statutory requirements of KRS

---

**5.** CMI moved to dismiss the petition, arguing that the petitioners could not consolidate their separate Georgia DUI cases in Kentucky, but should have filed separate petitions, and that none of the petitioners stated a claim against CMI, but were requesting that the circuit court grant comity to orders of the Georgia courts and issue a subpoena or summons for CMI to appear as a witness. Agree-

ing with CMI's arguments, the circuit court granted the motion following a hearing and ordered Lokk to file a separate "In Re" action within ten days by order entered November 5, 2012. Lokk filed her petition seeking a hearing and to enforce the Georgia court's order pursuant to the circuit court's direction on November 29, 2012.

421.240. CMI also argued that the due process considerations in the Uniform Act were intended to provide the witness, not the defendant, with due process of law.

The circuit court held a hearing on March 13, 2013, on the pending motion by CMI. Counsel for Lokk stated that the hearing was to decide the facial contest to the certificate and order, and then return for another hearing to determine materiality and necessity if the court determined that the certificate and order were facially valid. The court indicated that it could dismiss the certificates if they were not facially valid; counsel for Lokk stated, "Fair enough." The parties went on to discuss both the facial validity of the certificate and order as well as the materiality and necessity issue. After considering the parties' positions, the court found on the record that the certificate and order were facially defective under KRS 421.240(1). Counsel for CMI indicated that he was still willing to waive the defects if counsel for Lokk accepted the protective order. Counsel for the petitioners did not agree to that. Therefore, the court indicated that it would enter an order stating that the certificate and order were facially defective, without entering a protective order, and dismiss the petition. Counsel for Lokk stated that it was not proper for the court to make findings related to materiality and necessity unless a hearing was held on those issues.

On March 15, 2013, the circuit court entered an order dismissing Lokk's petition. The order provided in relevant part as follows:

This is a proceeding pursuant to KRS 421.230 to 421.270, the Kentucky Uniform Act. The Petitioner is a defendant in a criminal drunk driving prosecution in Georgia. He [sic] seeks an Order from this Court to enforce a certificate from a Georgia Court. The Georgia Certificate, and accompanying Order, seeks electronic discovery of the source code for the Intoxilyzer 5000 used in Georgia, as manufactured by CMI, Inc., of Owensboro, Kentucky.

Pursuant to KRS 421.240, this Court has independently reviewed the Georgia Order here. Based upon the foregoing, it is hereby ORDERED as follows:

1. The Georgia Certificate and Order are defective on their face. Neither contains a seal of the Georgia Court but, instead, is merely a clerk's certification of a copy of the Certificate and Order. Neither the Certificate nor the Order specifies when any CMI witness is to appear in the Georgia proceeding.

2. The Georgia Certificate/Order is also defective as a matter of law because it seeks disclosure of the source code of CMI, not for purposes of any existing claim or defense or hearing or trial, but solely for discovery purposes. Discovery is not a proper purpose for use of the provisions of the Uniform Act.

3. The Georgia Certificate/Order fails to particularize any underlying facts showing how disclosure of the source code is "material" directly to the defendant's DUI test or to any existing claim or defense in the DUI case. Instead, the discovery is directed toward providing a defense expert the opportunity to review the source code for purposes of a potential later generic challenge in the Georgia DUI Court.

4. The Georgia Certificate/Order seeks discovery from CMI of the source code, in electronic format. Thus, an appearance by a CMI

witness is not "necessary" for any specific Court appearance by CMI in the Georgia defendant's DUI case in Georgia. Further, the Georgia DUI defendant has alternative means available to test the Intoxilyzer 5000 used in his specific case in Georgia.

5. This Court finds, and reaffirms its previous holdings in prior cases before this Court and Div. II, that the source code is a trade secret and otherwise constitutes confidential business information of CMI. Even if the Georgia Order were otherwise sufficient, it would be an undue hardship for CMI to produce the source code, in electronic format or otherwise, unless pursuant to a Protective Order.

This appeal now follows.

On appeal, Lokk continues to argue that the circuit court erred in failing to hold a hearing on materiality and necessity pursuant to the Uniform Act, that her right to due process and compulsory process required a hearing pursuant to KRS 421.240(1), that the circuit court failed to give full faith and credit to the Georgia judicial proceeding when it held that the Georgia court erred in issuing the certificate of materiality, and that the certificate was not defective. CMI, in its brief, contends that the circuit court's decision should be affirmed.

■ The first argument we shall address is whether the certificate was defective on its face, as the circuit court held. After carefully considering the following statutes and case law, we agree that the certificate was defective on its face.

KRS 421.240(1) and (2) of Kentucky's Uniform Act sets forth the procedure for compelling the attendance of a person in Kentucky as a witness in another state.

This statute provides in relevant part as follows:

(1) If a judge of a court of record in any state which by its laws has made provision for commanding persons within that state to attend and testify in this state certifies under the seal of such court that there is a criminal prosecution pending in such court, or that a grand jury investigation has commenced or is about to commence, that a person being within this state is a material witness in such prosecution, or grand jury investigation, and that his presence will be required for a specified number of days, upon presentation of such certificate to any judge of a court of record in the county in which such person is, such judge shall fix a time and place for a hearing, and shall make an order directing the witness to appear at a time and place certain for the hearing.

(2) If at a hearing the judge determines that the witness is material and necessary, that it will not cause undue hardship to the witness to be compelled to attend and testify in the prosecution or a grand jury investigation in the other state, and that the laws of the state in which the prosecution is pending, or grand jury investigation has commenced or is about to commence (and of any other state through which the witness may be required to pass by ordinary course of travel), will give to him protection from arrest and the service of civil and criminal process, *he shall issue a summons, with a copy of the certificate attached, directing the witness to attend and testify in the court where the prosecution is pending, or where a grand jury investigation has commenced or is about to commence at a time and place specified in the summons.* In any such hearing the certificate shall be prima facie evidence of all the facts stated therein. [Emphasis added.]

KRS 421.250(1), in turn, sets forth the procedure for procuring the attendance of a witness from another state:

(1) If a person in any state, which by its laws has made provision for commanding persons within its borders to attend and testify in criminal prosecutions, or grand jury investigations commenced or about to commence, in this state, is a material witness in a prosecution pending in a court of record in this state, or in a grand jury investigation which has commenced or is about to commence, *a judge of such court may issue a certificate under the seal of the court stating these facts and specifying the number of days the witness will be required.* Said certificate may include a recommendation that the witness be taken into immediate custody and delivered to an officer of this state to assure his attendance in this state. This certificate shall be presented to a judge of a court of record in the county in which the witness is found. [Emphasis added.]

Finally, KRS 421.230 provides several definitions to be used in Uniform Act cases:

(1) The word "witness" as used in KRS 421.230 to 421.270 shall include a person whose testimony is desired in any proceeding or investigation by a grand jury or in a criminal action, prosecution or proceeding.

(2) The word "state" shall include any territory of the United States and District of Columbia.

(3) The word "summons" shall include a subpoena, order or other notice requiring the appearance of a witness.

*Dillingham v. Commonwealth,* 995 S.W.2d 377 (Ky.1999), as corrected (July 13, 1999), addresses the application of the Uniform Act in Kentucky. This case arose out of a Kentucky court's issuance of a certificate stating that four Indiana witnesses were material. The Indiana court determined that two of the witnesses were not material and the other two would incur undue hardship to attend the trial in Kentucky. This ruling was raised on direct appeal, along with other issues.[6] Through this case, the Supreme Court of Kentucky explained the purpose and mechanics of the Uniform Act, first recognizing that "[t]he Uniform Act is a reciprocal statute that provides a mechanism for a party to a criminal proceeding to compel attendance of out-of-state witnesses." *Id.* at 382. The first step in securing such out of state witnesses is in the trial court:

The Uniform Act requires, as a first step, that a motion be made with the trial court to certify a witness as being material and necessary to the proceeding. KRS 421.250(1). The proponent of the witness has the burden of showing materiality. *Mafnas v. State,* 149 Ga. App. 286, 254 S.E.2d 409, 412 (1979). The certification should state the facts upon which the trial court found the witness to be material and/or a summary of the witness's anticipated testimony. *See State v. Closterman,* 687 S.W.2d 613, 621 (Mo.Ct.App.1985). If certified, the certification is forwarded to a court of record in which the witness is found. KRS 421.250(1).

*Id.* The second step is to present this certification in a court where the witness is located:

Once the certification is presented to a court of record in which the witness is found, that court "shall fix a time and place for a hearing, and shall make an order directing the witness to appear at

---

6. The Supreme Court ultimately held, "[w]e cannot consider as error on appeal the actions of a court from a foreign jurisdiction.

The Indiana court's findings of non-materiality and undue hardship are beyond our powers of review." *Id.*

a time and place certain for the hearing." KRS 421.240(1). While the trial court in the requested state must make an independent determination as to whether the witnesses [sic] is material and as to whether compelling the witness to attend would cause undue hardship, "[i]n any such hearing the certificate shall be prima facie evidence of all the facts stated therein." KRS 421.240(2).

*Id.*

The Supreme Court of Georgia set forth that state's application of the Uniform Act in *Davenport v. State,* 289 Ga. 399, 400–02, 711 S.E.2d 699, 701–02 (2011) (footnotes omitted):

> Georgia's version of the Uniform Act, OCGA § 24–10–90 et seq., is the statutory means by which a witness living in a state other than Georgia can be compelled to attend and testify at a criminal proceeding in Georgia (OCGA § 24–10–94(a)), and a witness living in Georgia can be compelled to attend and testify at a criminal proceeding in another state. OCGA § 24–10–92. While the statute speaks only to securing the attendance of an out-of-state witness, the scope of the statute has been construed in Georgia and several other states to authorize issuance of a summons that requires the out-of-state witness to bring items or documents with the witness. *Wollesen v. State of Ga.,* 242 Ga.App. 317, 529 S.E.2d 630 (2000) ( "[T]he power to order a witness to travel to a foreign state for the purpose of testifying [in a criminal proceeding] implicitly encompasses the power to order the witness to produce relevant documents."). *See French v. State,* 288 Ga.App. 775, 655 S.E.2d 224 (2007); *Wyman v. State,* 125 Nev. 592, 217 P.3d 572 (2009); *State v. Bastos,* 985 So.2d 37 (Fla. 3rd Dist.Ct.App.2008); *Ex parte Simmons,* 668 So.2d 901 (Ala.

Crim.App.1995); *In the Matter of Rhode Island Grand Jury Subpoena,* 414 Mass. 104, 605 N.E.2d 840 (1993); *In the Matter of State of Calif., etc., Grand Jury Investigation,* 298 Md. 243, 469 A.2d 452 (1983) later proceeding, 57 Md.App. 804, 471 A.2d 1141 (1984); *In the Matter of State of Washington,* 198 N.Y.S.2d 897, 10 A.D.2d 691 (1960); *In the Matter of Saperstein,* 30 N.J.Super. 373, 104 A.2d 842 (1954).

> Because appellant Davenport, a defendant in a case to be tried in Georgia, sought the issuance of a certificate requesting the attendance in Georgia of an out-of-state witness and evidence purportedly in that witness's custody and control, this case falls under OCGA § 24–10–94(a). When faced with a motion by a litigant in a Georgia criminal proceeding for the attendance of a witness located outside Georgia, a Georgia trial court is required by OCGA § 24–10–94(a) to determine whether the person sought to be summoned to the Georgia trial "is a material witness in a prosecution pending in a court of record in [Georgia,]" and whether the state in which the out-of-state witness is located has laws "for commanding persons within its borders to attend and testify in criminal prosecutions . . . in this state[,] . . ." If those criteria are satisfied, the Georgia trial judge "may issue a certificate under seal" that is then presented to a judge of a court of record in the out-of-state county in which the witness is found. *Id.* Upon presentation of the certificate, the out-of-state judge holds a hearing at which the witness has been ordered to appear, to determine whether to issue a summons directing the witness to attend and testify in the Georgia criminal proceeding. OCGA § 24–10–92(a); Ky.Rev.Stat. Ann. § 421.240(1). The summons requiring the out-of-state

witness to attend the Georgia criminal proceeding shall be issued by the out-of-state judge if that judge determines that the witness is material and necessary to the Georgia criminal proceeding, that compelling the witness to attend the Georgia proceeding and testify would not cause an undue hardship to the witness, and that Georgia will give the witness protection from arrest and the service of civil or criminal process. OCGA § 24–10–92(b); Ky.Rev.Stat. Ann. § 421.240(2).

Georgia's Uniform Act contains the same requirements as Kentucky's Uniform Act.[7]

In the present case, the certificate does not contain a seal of the Georgia Court as required in KRS 421.250 and Official Code of Georgia (OCGA) § 24–10–94(1) (now OCGA § 24–13–94). We do not agree with Lokk that the Georgia clerk's certifications on the copies of the certificate and order were sufficient to constitute a seal of the Georgia court pursuant to the Uniform Act. Furthermore, neither the certificate nor the order from the Georgia court contains any information about the date and time the witness would be required to testify, as required by KRS 421.240(2) and OCGA § 24–10–92 (now OCGA § 24–13–92(b)). We specifically disagree with Lokk's argument that the statutory requirements set forth in KRS 421.250(1) are permissive rather than mandatory. Rather, the General Assembly, through the use of the word "may," has provided the circuit courts in this state with the discretion to issue a certificate of materiality. But once that discretion has been exercised and the circuit court decides to issue such a certification, the remaining requirements become mandatory. Accordingly, the circuit court properly dismissed Lokk's petition without holding a hearing on materiality and necessity pursuant to KRS 421.240(1).

 While this holding is determinative of the entire appeal, we shall briefly address several of the other arguments Lokk raised in her brief. First, Lokk is correct that the circuit court should have held a hearing on materiality and necessity before ruling on the merits of her petition. The circuit court dismissed the petition based upon its facial defects, and it should not have gone on to consider the materiality or necessity of the certificate and order without holding a hearing. However, that hearing was not necessary because the Georgia court's certificate and order were facially defective. For that reason, we shall not address the materiality or necessity of the source code to Lokk's Georgia prosecution, nor shall we consider whether discovery is a proper use for the provisions of the Uniform Act.[8] Finally, we agree with CMI that the due process and com-

---

7. We note that the version of Georgia's Uniform Act in effect at the time of Lokk's action was repealed effective January 1, 2013, and the current version of Georgia's Uniform Act is now codified at OCGA § 24–13–90, *et. seq.*

8. We note that the Supreme Court of Kentucky has addressed the ability of a defendant in Kentucky to obtain the source code for the Intoxilyzer in *Commonwealth v. House*, 295 S.W.3d 825, 829 (Ky.2009), in relation to whether a subpoena should be quashed:

> A subpoena *duces tecum* under our rule may be quashed if it is "unreasonable or oppressive," and we agree with the federal courts that it is unreasonable if, as in this case, the party demanding production can point to nothing more than hope or conjecture that the subpoenaed material will provide admissible evidence. House, as noted above, sought CMI's Intoxilyzer code hoping that his expert might discover flaws in it, but he presented no evidence whatsoever suggesting that the code was flawed. His subpoena was nothing but a classic fishing expedition, which RCr 7.02(3) does not allow.

pulsory process protections are meant for the witness, not for Lokk, and that courts in Kentucky are not required to give full faith and credit to the Georgia certification. KRS 421.240(2) provides circuit courts with the discretion to deny a request to issue a summons pursuant to the provisions of the Uniform Act.

For the foregoing reasons, the order of the Daviess Circuit Court is affirmed.

ALL CONCUR.