# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: FEBRUARY 15, 2018
NOT TO BE PUBLISHED

Supreme Court of Kentucky FINAL

2017-SC-000191-MR
2017-SC-000246-MR DATE 3/8/18 Kim Redmon, DC

JEVON DONNELL MAGEE                                    APPELLANT

ON APPEAL FROM FAYETTE CIRCUIT COURT
V.          HONORABLE THOMAS L. CLARK, JUDGE
                    NO. 15-CR-00593

COMMONWEALTH OF KENTUCKY                               APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

Jevon Magee appeals as a matter of right[1] his conviction of first-degree manslaughter, of being a convicted felon in possession of a handgun, and of being a second-degree persistent felony offender, for all of which he received a sentence of twenty years' imprisonment. Magee raises a single issue on appeal—that the trial court erred in denying his motion to suppress an eyewitness's pre-trial identification. Finding no error in the trial court's denial of Magee's motion, we affirm the judgment.

---

[1] Ky. Const. § 110(2)(b).

## I. BACKGROUND.

Detective Bill Brislin was dispatched to an apartment complex where he found an individual suffering from several gunshot wounds. The victim later died of his wounds.

Detective Brislin spoke with an eyewitness who lived in the apartment complex. The eyewitness claimed to have observed the shooting and to be able to identify the shooter. She claimed to have seen the shooter enter Apartment 7 at 1784 Augusta Court.

Detective Brislin then proceeded to visit Apartment 7 where he spoke with Magee's sister, who lived at the apartment and who gave Magee's name to the detective. Detective Brislin then obtained Magee's driver's license photo, and he used it with five other photos to prepare a photo lineup to show the eyewitness. All photos, including Photo #4 of Magee, depicted black men (although one photo actually appears to be that of a Latino man) having various degrees of skin tones, facial hair, and fullness of face. Three of the photos were vertically oriented and three were horizontally oriented.

The next day, Detective Brislin met again with the eyewitness, and she stated that on the day of the shooting, she was in her car, warming it up while smoking, when she heard gunshots. She looked to her right, seeing Magee and the victim engaging in a physical altercation about 50 to 75 feet away. She then saw Magee, with a handgun in his hand, shoot the victim. At that point, Magee and the victim ran around the apartment building, which prompted the eyewitness to jump out of her car and run into her own apartment.

2

As the witness approached her apartment, she encountered Magee as he came around the corner of the apartment complex. The two exchanged words before Magee went into Apartment 7.

The eyewitness told Detective Brislin that she did not know Magee's name but that she had seen Magee around the apartment complex a few times and believed he was the brother of the woman living in Apartment 7. She described Magee as a black male wearing dark clothes, possibly a Carhartt jacket. The eyewitness stated that about 20 to 30 minutes after her encounter with Magee, she saw him leave with the woman who lived in Apartment 7 (his sister), now wearing faded jeans and a green satin jacket.

Detective Brislin then showed the eyewitness the photos he had compiled. As she flipped through the photos in sequential order, she stopped at Photo #4, Magee's photo, and immediately identified him as the shooter, claiming she was positive this was the shooter.

Magee was indicted on one count of murder, one count of being a convicted felon in possession of a handgun, and one count of being a second-degree persistent felony offender. Before trial, Magee filed a motion to suppress the photo identification by the eyewitness, arguing that it was impermissibly suggestive and that there was a danger of a false identification. The trial court conducted an evidentiary hearing on the matter, eventually denying the motion.

The trial court determined that the photos in the lineup were sufficiently similar to each other as to age, race, hair, facial hair, and skin color so as to

3

make the identification not unduly or impermissibly suggestive. The trial court found no risk of a creation of a substantial likelihood of misidentification. The court found no merit in Magee's contention that including three horizontally oriented and three vertically oriented photos, instead of all photos uniformly horizontally or vertically oriented, impaired the identification process.[2] Lastly, the court determined that under the *Neil v. Biggers*[3] factors, the eyewitness had ample opportunity to see Magee, her degree of attentiveness was high, she was positive Magee was the shooter, and the photo array was shown to the witness within a reasonable time after the shooting.

After the trial court denied the suppression motion, Magee entered a conditional guilty plea to first-degree manslaughter (amended from the murder charge), convicted felon in possession of a firearm (amended from the handgun charge), and of being a second-degree persistent felony offender, reserving the right to challenge the pre-trial identification issue. The court sentenced Magee to the agreed upon 20-year sentence. Magee then appealed the pre-trial identification issue to this Court.

## II. ANALYSIS.

This Court in *King v. Commonwealth* articulated the standard for reviewing a trial court's denial of a defendant's motion to suppress evidence of

---

[2] The trial court acknowledged that if only Magee's photo was horizontally or vertically oriented compared to the other five photos, this would most likely constitute an unconstitutional impairment of the identification process.

[3] 409 U.S. 188, 199 (1972). The factors are outlined and analyzed later in this opinion.

a pre-trial identification.[4] "The 'clearly erroneous' standard applies to a trial judge's findings of fact on a motion to suppress evidence."[5] "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."[6] "A trial judge's ruling as to the admissibility of evidence is reviewed under an abuse of discretion standard."[7] "An abuse of discretion occurs when a trial judge's decision is arbitrary, unreasonable, unfair, or unsupported by sound legal principles."[8]

"The determination of whether identification testimony violates a defendant's due process rights involves a two-step process."[9] "First, the court examines the pre-identification encounters to determine whether they were

---

[4] 142 S.W.3d 645 (Ky. 2004). Although colloquially referred to as a "pre-trial identification," the distinction between a pre- and during-trial identification grounds itself in the "initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Kirby v. Illinois*, 406 U.S. 682, 689 (1972). This "initiation" determines whether the Sixth Amendment's Confrontation Clause protection applies to the identification proceedings. *Id.* If "adversary judicial criminal proceedings" have not yet begun, then only the Fourteenth Amendment's Due Process Clause protection applies, i.e. the analysis articulated in *King*. Here, no "adversary judicial criminal proceedings" had arisen against Magee at the time of the photo array, so only the protections of the Fourteenth Amendment articulated in *King* apply, not those of the Sixth Amendment.

[5] *King*, 142 S.W.3d at 649 (citing *Neil v. Biggers*, 409 U.S. 188, 199 (1972)).

[6] *U.S. v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948) (recognized by *Petter v. Jackson*, 298 S.W.2d 289, 290 (Ky. 1957)).

[7] *King*, 142 S.W.3d at 649 (citing *Goodyear Tire & Rubber Co. v. Thompson*, 11 S.W.3d 575 (Ky. 2000)).

[8] *King*, 142 S.W.3d at 649 (citing *Commonwealth v. English*, 993 S.W.2d 941 (Ky. 1999)).

[9] *King*, 142 S.W.3d at 649 (citing *Dillingham v. Commonwealth*, 995 S.W.2d 377, 383 (Ky. 1999) and *Simmons v. United States*, 390 U.S. 377, 384 (1968)).

unduly suggestive."[10] "If not, the analysis ends and the identification testimony is allowed."[11] "If so, 'the identification may still be admissible if under the totality of the circumstances the identification was reliable even though the [identification] procedure was suggestive.'"[12]

"Determining whether under the totality of the circumstances the identification was reliable requires consideration of five factors enumerated by the United States Supreme Court in *Neil*."[13] "The five factors are: 1) the opportunity of the witness to view the criminal at the time of the crime; 2) the witness'[s] degree of attention; 3) the accuracy of his prior description of the criminal; 4) the level of certainty demonstrated at the confrontation; and 5) the time between the crime and confrontation."[14]

Simply stated, the trial court did not err by denying Magee's motion to suppress evidence of the pre-trial identification. The record amply supports a finding that the pre-trial identification was not unduly suggestive, nor unreliable.

The pre-trial identification was not unduly suggestive because the photos were all of black men (although one photo actually appears to be that of a Latino man), in a similar age range, with short hair and receding hairlines and

---

[10] *Id.*

[11] *King*, 142 S.W.3d at 649.

[12] *Id.* (citing *Dillingham*, 995 S.W.2d at 383 and *Simmons*, 390 U.S. at 384) (quoting *Neil*, 409 U.S. at 199).

[13] *King*, 142 S.W.3d at 649.

[14] *King*, 142 S.W.3d at 649 ("This Court has previously adopted these factors in *Savage v. Commonwealth*, 920 S.W.2d 512 (Ky. 1995)).")

6

with varying degrees of facial hair. Additionally, the photos were stylistically the same—they were bust shots, with the same background, and all were operator's license photos. The only differences Magee points out are the different degrees of skin tone, facial hair, and fullness of face, in addition to the horizontal versus vertical orientation of the photos. Taken individually or cumulatively, these minute differences do not rise to the level of undue suggestion that the Fourteenth Amendment was intended to guard against.[15]

Even if we were to conclude that the pre-trial identification procedure in this case was unduly suggestive, the identification was more than reliable under the totality of circumstances and specific factors enumerated in *Neil.* First, the eyewitness had the opportunity to view Magee from her car during the commission of the crime, in addition to the face-to-face encounter and conversation she had with him outside of her apartment door. Second, the eyewitness was undoubtedly attentive to the situation, as she witnessed a shooting first-hand, then came face-to-face with the shooter. Third, although the eyewitness's description of Magee was not exceptionally detailed, the eyewitness described Magee as a black man wearing dark clothing, possibly a Carhartt jacket, identified him as the brother of the young woman living in Apartment 7, and additionally identified him as having changed clothes into faded jeans and a green satin jacket when Magee left the apartment. Fourth,

---

[15] *See Duncan v. Commonwealth,* 322 S.W.3d 81, 96 (Ky. 2010) ("Repeatedly showing the picture of an individual" can have an impermissible focusing effect.); *Moore v. Commonwealth,* 569 S.W.2d 150, 153 (Ky. 1978) ("The display...of a single mug shot...unaccompanied by any other pictures, was unnecessarily suggestive.").

the eyewitness described herself as one-hundred percent confident that the individual she identified in the photos was the shooter. Lastly, although the eyewitness did not undertake the identification procedure immediately after the crime occurred, she did so the following day.

Taken together, these factors weigh heavily in favor of the conclusion that the pretrial identification procedure was reliable. We cannot say that the trial court abused its discretion in concluding the same.

### III.     CONCLUSION.

As the pre-trial identification procedure was not unduly suggestive, in addition to being reliable, we affirm the trial court's denial of Magee's motion to suppress evidence of a witness's pre-trial identification.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Robert Chung-Hua Yang
Assistant Public Advocate

COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Courtney J. Hightower
Assistant Attorney General